**Noel O. MURCHU, a/k/a Noel Murphy, Petitioner, Appellant,**

v.

**UNITED STATES of America, Respondent, Appellee.**

No. 90–1399.

United States Court of Appeals, First Circuit.

Submitted Aug. 1, 1990.

Decided Feb. 13, 1991.

---

Noel O. Murchu, on brief, pro se.

Richard G. Stearns, Asst. U.S. Atty., and Wayne A. Budd, U.S. Atty., on brief, Boston, Mass., for respondent, appellee.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

PER CURIAM.

Appellant Noel Murphy (Murphy) appeals from a district court order dismissing his motion to vacate his conviction and sentence under 28 U.S.C. § 2255. After a jury trial, Murphy and his co-defendant, Ciarin Hughes, were convicted of conspiracy to export arms without a license, conspiracy to violate the domestic firearms laws, and unlawful dealing in firearms.[1] The charges resulted from an FBI "sting" in which Murphy agreed to purchase weapons for export to Ireland for use by the Irish Republican Army. Unbeknownst to Murphy, the seller of munitions was an undercover FBI agent. We affirmed Murphy's convictions in *United States v. Murphy*, 852 F.2d 1 (1st Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989), and subsequently denied his petition for rehearing. After unsuccessfully seeking certiorari from the Supreme Court, Murphy brought the present motion under 28 U.S.C. § 2255. In the motion he alleged as follows:

(1) The petit jury that convicted him was unconstitutionally selected and empaneled because prospective Irish American jurors were excluded by the prosecution's discriminatory use of peremptory challenges, in violation of Murphy's rights to trial by a jury drawn from a fair cross section of the community and to equal protection under the Sixth and Fourteenth Amendments;

(2) The district court erred in refusing to instruct the jury on entrapment, and this court erred in upholding the district court on appeal;

(3) The government engaged in outrageous conduct in its investigation of Murphy, in violation of his rights to due process;[2]

---

1. Murphy and Hughes were acquitted of being aliens in illegal possession of a firearm under 18 U.S.C. App. sec. 1202(a) (repealed).

2. Murphy has not argued this issue on appeal. We therefore deem it waived. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). We add only that the evidence established that Murphy agreed to purchase 102 guns for $73,000 and planned to resell these munitions to Irish nationals for $107,000. He was motivated by politics and profit. Despite several opportunities to withdraw from the deal, Murphy continued to pursue the transaction, ultimately procuring the money and men to consummate the exchange. The evidence in

(4) The trial judge was biased against Murphy and prejudiced him by making certain remarks to witnesses and counsel and by his instructions to the jury;

(5) The trial judge violated Fed.R. Crim.P. 11(e)(1) by attempting to coerce a guilty plea from Murphy in exchange for a five year sentence, then vindictively sentenced Murphy to nine years after Murphy chose to pursue his right to trial by jury;

(6) Murphy's counsel rendered him ineffective assistance by failing to challenge or adequately pursue the aforementioned issues at trial and in Murphy's direct appeal.

The government filed a detailed response to the section 2255 motion and argued that the motion should be dismissed. Murphy did not respond. The district court dismissed Murphy's motion without a hearing on the grounds that his factual allegations were without foundation in the record and his constitutional claims without support in the law.[3]

We address each claim in turn. Since Murphy's section 2255 motion was dismissed without a hearing, we shall accept his allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Mosquera*, 845 F.2d 1122, 1124 (1st Cir. 1988). We affirm the dismissal except as to the claim of judicial misconduct and the concomitant ineffective assistance of counsel claim.

### 1. Jury Selection

■ Murphy argues that the government's use of its peremptory challenges to remove persons with Irish surnames violated his Sixth and Fourteenth Amendment rights to a jury drawn from a fair cross section of the community and his Four-

teenth Amendment right to equal protection of the laws. The record before us does not include a transcript of the jury selection proceedings; Murphy, however, alleges the following facts, which the government does not dispute. At the voir dire, the district judge asked all prospective jurors with "an interest in the struggle of the Irish people against the British government" to identify themselves. In response to this solicitation, three veniremen—Reardon, Curran, and Connolly—identified themselves and were questioned by the court. Each was not excused at that time. However, the prosecutor subsequently exercised peremptory challenges to exclude each from membership on the petit jury. The prosecutor also peremptorily challenged a venire member with the surname Kirk. The defendant challenged three prospective jurors named Connolly, Brogan, and Breslin. The empaneled jury included jurors with the arguably Irish surnames of MacDonald, Benchley, Costello, and Curren. Defense counsel moved to discharge the jury on the grounds that the government's removal of individuals of Irish ancestry violated Murphy's Sixth and Fourteenth Amendment rights. The district court denied this motion without a hearing and without requiring the prosecutor to state his reasons for exercising the peremptory challenges. The court's ruling stated three grounds: (1) "my inquiry of [the] jury panel screened out those jurors who had strong personal convictions based on ethnic or national grounds"; (2) "the jury empaneled has jurors Costello, Benchley, Curren, M[a]cDonald"; (3) "the defendant challenged panel members Connolly, Brogan, and Breslin" while "the government challenged panel members Reardon, Curran, Connolly and Kirk."[4]

---

this case fell well short of establishing outrageous conduct on the part of the government.

**3.** Murphy also filed a motion to recuse the district judge who tried his case from passing on his section 2255 motion, which was accompanied by an affidavit of bias and prejudice. The judge implicitly denied this motion by dismissing the section 2255 motion. We think that the district judge should have recused himself as to those portions of the section 2255 motion which

alleged judicial misconduct. Our reasons are set out *infra*.

**4.** Murphy says that he did not argue on direct appeal that the court's ruling was erroneous because defense counsel refused to do so, despite Murphy's insistence that the issue be included in his appellate brief. The fact that Murphy raised the jury selection issue only at trial presents the question of whether the failure to raise this constitutional issue on appeal con-

The question now presented by Murphy's section 2255 motion is whether the government's removal of the four prospective jurors with the arguably Irish surnames of Reardon, Curran, Connolly and Kirk states a violation of the Equal Protection Clause under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), or a violation of the Sixth Amendment's fair cross section requirement. In contrast to the judge's findings, Murphy alleges that the surnames of the empaneled jurors are *not* Irish and that the petit jury that convicted him had no Irish Americans. For present purposes we shall assume he is correct in this although we do not know. We shall assume that Murphy is right in asserting that the prosecution's peremptory challenges successfully excluded four Americans with, at least, one or more Irish ancestors. We turn then to the equal protection claim.

■■ We have stated,

"For a defendant to establish a prima facie case of purposeful discrimination in the selection of the petit jury, based solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial, the defendant first must show that he is a member of a cognizable racial group." *United States v. Sgro*, 816 F.2d 30, 33 (1st Cir.1987), *citing Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1722–1723, 90 L.Ed.2d 69 (1986), and *Castaneda v. Partida*, 430 U.S. 482, 492, 97 S.Ct. 1272, 1278, 51 L.Ed.2d 498 (1977).[5]

To establish membership in a "cognizable group" for *Batson* purposes, a defendant must show that (1) the group is definable and limited by some clearly identifiable factor, (2) a common thread of attitudes, ideas or experiences runs through the group, and (3) a community of interests exists among the group's members, such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process. A further ingredient of cognizability is that the group be one the members of which are experiencing unequal, *i.e.* discriminatory, treatment, and needs protection from community prejudices. *United States v. Bucci*, 839 F.2d at 833 & n. 11a ("The important consideration for equal protection purposes is not whether a number of people *see themselves* as forming a separate group, but whether others, by treating those people unequally, *put them* in a distinct group.") *See also United States v. DiPasquale*, 864 F.2d 271, 275–77 (3d Cir. 1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989),[6] *United States v. Angiulo*, 847 F.2d 956, 984 (1st Cir.1988), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988), *United States v. Dennis*, 804 F.2d 1208, 1210 (11th Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987) (rejecting defendant's *Batson* claim for failure to prove that black males were singled out for different treatment from blacks generally). Once the defendant proves cognizability, he must next show that the government exercised its peremptory challenges so as to exclude the members of his group. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722. Finally, "the defendant must show that these facts and any other relevant circum-

---

stitutes a procedural default. Such a default might prevent this court from reaching the merits of Murphy's claim absent cause for the procedural default and resulting prejudice. *See United States v. Frady*, 456 U.S. 152, 167–69, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). *Compare Norris v. United States*, 687 F.2d 899, 900–904 (7th Cir.1982) (cause plus prejudice test, rather than deliberate bypass test, applies in determining whether constitutional issue waived on direct appeal can be considered in 28 U.S.C. § 2255 motion). We need not decide this question because Murphy's section 2255 filings establish that this claim has no merit.

5. We have previously assumed that the *Batson* formulation extends to cognizable ethnic and national groups that have been discriminated against, as well as racial groups. *United States v. Bucci*, 839 F.2d 825, 839 (1st Cir.1988), *cert. denied*, 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988).

6. In *Government of Virgin Islands v. Forte*, 865 F.2d 59 (3d Cir.1989), allowing a *Batson* challenge to the exclusion of white jurors during a criminal trial in the Virgin Islands, it is unclear whether the court meant to overrule this aspect of *DiPasquale* or simply assumed as obvious that in the Virgin Islands whites form a minority subject to differential treatment.

stances raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury on account of their" membership in the group. *Id.* Once a defendant has made such a showing, the government must articulate clear, reasonably specific, neutral reasons related to the case to be tried for exercising its peremptory challenges. *Batson,* 476 U.S. at 98 & n. 20, 106 S.Ct. at 17 & n. 20.

Turning to Murphy's situation, we note the complete absence of any allegations or evidence that Americans of Irish ancestry—even if otherwise a cognizable group—were being subject to unequal treatment by their fellow Americans at the time of Murphy's trial, and hence needed protection from community prejudices. *United States v. Bucci,* 839 F.2d at 833. Murphy did not allege the existence of such discriminatory treatment of Irish–Americans in his 2255 motion, nor did he respond to the government's argument that the section 2255 motion should be dismissed for lack of this showing.[7] In his reply brief, Murphy simply urges this court to abdicate this element of the cognizability test. Even assuming we were free to do so, however, we see no reason to jettison the discrimination element, which has long been required for proof of an equal protection violation. *See Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) ("The first step [in establishing an equal protection violation in the grand jury selection process] is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment of the laws, as written or applied."); *Hernandez v. Texas,* 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed.866 (1954). *Compare Holland v. Illinois,* —— U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) (peremptory challenges on racial grounds do not violate Sixth Amendment). Consequently, because Murphy has neither alleged nor otherwise suggested that

Americans of Irish ancestry are a group singled out for discrimination in our society, and has indeed indicated that he is not prepared to prove this element of cognizability, he has failed to state a *Batson* claim.[8]

■ As for Murphy's Sixth Amendment claim, *Holland v. Illinois,* 110 S.Ct. at 806–811, held that the Sixth Amendment's fair cross section requirement does not prevent either side from exercising peremptory strikes to exclude cognizable racial or other groups from a petit jury. This defeats Murphy's Sixth Amendment claim, as he effectively concedes in his brief on appeal.

### 2. Entrapment

■ Murphy's claim for vacation of his sentence based on the district court's refusal to submit the issue of entrapment to the jury was fully litigated in Murphy's direct appeal. "Issues resolved by a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Dirring v. United States,* 370 F.2d 862, 864 (1st Cir.1967). *See also Santiago v. United States,* 889 F.2d 371, 377 (1st Cir.1989); *Tracey v. United States,* 739 F.2d 679, 682 (1st Cir. 1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985). Accordingly, the treatment of Murphy's ill-fated entrapment defense is not a matter we can consider.

### 3. Judicial Bias

Murphy argues that the district judge held bias towards him and conducted the trial unfairly. Murphy particularly cites the following conduct: (1) assisting in the removal of Irish Americans from Murphy's jury; (2) displaying hostility to the defense during opening statements and cross-examination of the FBI agent who set up the "sting," while allowing government witnesses great latitude during the prosecu-

---

7. We are hard pressed to conceive of how such a showing could have been made in Massachusetts where the Irish ancestry of people in all walks of life, including leadership positions, is a well known fact—to mention but a few, the Mayor of Boston, the Senate President, and both U.S. Senators.

8. Murphy argues that the district judge implicitly found Irish Americans to be a cognizable group in denying Murphy's motion to discharge the jury panel. Even if this were so, we would not be bound by the judge's ruling.

tion's questioning; (3) refusing to submit the issue of entrapment to the jury while instructing them that (a) the government's use of artifice and deception was lawful and (b) if they (*i.e.,* the jury) were wrong, they could never be corrected (thereby, Murphy argues, inviting the jury to convict him lest a potential terrorist go free); and (4) erroneously instructing the jury on the elements of the charged offenses.

■ With respect to Murphy's first argument, the district judge did not screen jurors on the basis of national ancestry, but did question those who expressed an interest in the conflict between the Irish and British. The judge's voir dire questions sought only to see whether, because of their particular interest in the political overtones of the case, they would be unable to judge the evidence impartially. There was no indication whatever that the judge was personally biased against Irish Americans or the defendant.

■ We also discern no bias in the judge's conduct toward defense counsel and witnesses at trial. Murphy claims that the judge prejudiced him by referring to the defense as a "game", by chiding defense counsel during opening statements, and by interrupting defense counsel's cross-examination of F.B.I. agent Butchka, the government's main witness. Our review of those portions of the record which are available discloses no improper conduct by the trial judge. While Murphy has not alleged that the judge referred to the defense as a "game" in front of the jury, that isolated comment plainly does not rise to the level of a constitutional violation. Murphy alleges no specifics in support of his allegations that the judge chided defense counsel during opening statements. Absent information as to what happened and what harm allegedly resulted, Murphy has failed to state a claim under section 2255.

■ The record discloses that the district judge interrupted defense counsel's cross-examination of F.B.I. agent Butchka, to allow Butchka to complete his responses to defense counsel's questions. Defense counsel sought to elicit conclusions from Butchka as to the import of certain recorded conversations he had had with Murphy. Murphy complains of interruptions by the trial judge on two occasions. The first was to advise defense counsel that, notwithstanding his attempts to focus on certain portions of the transcripts of these conversations, the prosecution on redirect examination would be allowed to review the portions of the transcripts that defense counsel did not want read to the jury.[9] This remark was an appropriate and permissible effort to expedite the taking of evidence. *See United States v. Olmstead,* 832 F.2d 642, 648 (1st Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1739, 100 L.Ed.2d 202 (1988). *See also* Fed.R.Evid. 611(a). Second, Murphy complains that the judge prejudiced him by remarking that the jury might come to a wholly different conclusion from the one defense counsel sought to elicit from agent Butchka. Again, in context, this remark served only to appropriately remind the jury of their factfinding function. Murphy's remaining challenges to the district court's jury instructions either were litigated in his direct appeal and are thus barred for the same reasons as his entrapment claim or involved instructions that served only to remind the jury of their duty as factfinders.

### 4. Judicial Coercion and Vindictive Sentencing

■ Murphy alleges that the district judge violated Fed.R.Cr.P. 11(e) by attempting to coerce him to plead guilty. Specifically, Murphy says that the judge initiated and participated in *off the record* plea discussions with counsel at the close of the second day of trial. The court allegedly offered to sentence Murphy to a five year term in return for a guilty plea. Thereafter, Murphy says, upon his refusal

---

9. After directing the witness to respond to defense counsel's question, the court told defense counsel, "But Mr. Stearns [the Assistant United States Attorney] is going to do the exact same thing, I suggest, when time for redirect comes and we will read all the answers that you don't want read." Defense counsel objected, and the judge responded, "If you would only do it completely, ... the jury would get it once and for all."

to plea bargain, the judge became increasingly hostile toward the defense and vindictively sentenced Murphy to nine years imprisonment after the jury returned their verdict.[10] In support of his claim of vindictiveness, Murphy points out that six of his codefendants received sentences in the vicinity of six months, and that he, Murphy, was acquitted of being an alien in illegal possession of a firearm.

The government states in its appellate brief that the discussion as alleged by Murphy never happened. Rather, the government says, the judge merely inquired early in the trial as to whether the case might be resolved. Government counsel informed the court that plea discussions had broken off because Murphy was determined to see his case through to a verdict. (Govt.Br. pp. 10 n. 6, 15). The government contends that the sentence was appropriate, given Murphy's leading role in the scheme. It is said to be comparable to the eight years received by his codefendant Hughes.

A motion under 28 U.S.C. § 2255 "can be dismissed without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because 'they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir.1990), *citing Myatt v. United States*, 875 F.2d 8, 11 (1st Cir.1989). In the instant case, Murphy could well be entitled to relief if his allegations were true. District judges are not supposed to participate in plea discussions, or initiate them. In *Porcaro v. United States*, 784 F.2d 38, 42 (1st Cir.), *cert. denied*, 479 U.S. 916, 107 S.Ct. 320, 93 L.Ed.2d 293 (1986) (*Porcaro I*), this court

remanded a section 2255 motion which alleged that the district judge attempted to coerce a guilty plea from Porcaro in exchange for a one year sentence. In so doing, we observed that a judge's making of a plea offer violates Fed.R.Cr.P. 11(e), and depending on the circumstances, could create an appearance of vindictive sentencing entitling the petitioner to be resentenced before another judge. 784 F.2d at 42, citing *Longval v. Meachum*, 693 F.2d 236, 239 (1st Cir.1982). Murphy's allegations state a cognizable claim identical to that raised in *Porcaro*. They are not conclusory, contradicted by the record nor so inherently incredible as to permit them to be ignored. Where Murphy alleges that the judge's improper conduct occurred in an off the record discussion with counsel, this is the type of case where the record "could ... cast no real light" on Murphy's allegations. *Machibroda v. United States*, 368 U.S. 487, 494–495, 82 S.Ct. 510, 513–514, 7 L.Ed.2d 473 (1962).[11]

The district judge, in considering this claim, may well have relied on his knowledge of his own conduct to conclude that no such improper plea negotiations occurred. However, the same could be said of the district judge whose conduct was challenged in *Porcaro*. In that case we remanded those parts of the petitioner's 2255 motion which alleged judicial misconduct to another district judge for resolution. 784 F.2d at 42. We conclude that, as in *Porcaro*, further factual inquiry is necessary to resolve this claim, and that, to avoid any appearance of impropriety, the matter should be decided by another factfinder. We therefore remand this issue to the district court, with directions that it be assigned to a different judge.[12]

---

**10.** The judge sentenced Murphy to concurrent five year terms on his convictions for conspiracy to violate the Arms Export Control Act, 22 U.S.C. § 2778, and unlawful dealing in firearms in violation of 18 U.S.C. § 922(a)(1). Murphy received a consecutive four year term on his conviction for conspiracy to violate the domestic firearms laws, 26 U.S.C. § 5861(d).

**11.** The government argues that Murphy is not entitled to relief because the record does not support his allegations and because the improprieties alleged by Murphy never happened.

But one may not conclusively disprove that an off the record discussion did not happen by referring to the record. *See Bender v. United States*, 387 F.2d 628, 630 (1st Cir.1967).

**12.** In so ruling, we do not imply that an evidentiary hearing is required. *Compare Porcaro I* with *Porcaro v. United States*, 832 F.2d 208 (1st Cir.1987). (*Poracro II*) (affirming dismissal of judicial misconduct claim on documentary evidence). Murphy can be asked, initially, to submit an affidavit or deposition from himself and

#### 5. *Ineffective assistance of counsel*

Murphy claims that defense counsel deprived him of his Sixth Amendment right to counsel by failing to pursue adequately either at trial or in Murphy's direct appeal the following issues: (1) the alleged unconstitutional empaneling of the jury; (2) the entrapment defense; (3) the judge's alleged efforts to coerce a guilty plea and vindictive sentencing.

 "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The petitioner must prove that counsel's conduct fell below an objective standard of reasonableness, and that this prejudiced him in the sense that there is a reasonable probability that, but for counsel's errors, the result below would have been different. *Id.*, 466 U.S. at 687–688, 694, 104 S.Ct. at 2064–2065, 2068. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066.

 Murphy argues that defense counsel was ineffective because he failed to request a hearing to prove the cognizability of persons with Irish surnames, and further failed to argue this issue on appeal. Defense counsel's letters to Murphy, which are part of the § 2255 motion, establish that counsel's decision to forego on appeal the issue of the alleged unconstitutional empanelment was based on a tactical judgment that this issue was not meritorious and was likely to dilute the effectiveness of other arguments counsel judged to be more sound. Such decisions do not constitute ineffective assistance of counsel. "[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily

form the basis of a claim of ineffective assistance." *United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir.1983). Moreover, if, as Murphy argues, the district court implicitly assumed that Irish Americans were a cognizable group, but denied Murphy's motion to discharge the jury panel anyway, there could be no prejudice to Murphy from defense counsel's failure to request a hearing to prove cognizability at trial. At the time of Murphy's trial, counsel did not have the guidance of *Sgro* and *Bucci*, and as we suggest above, the prospects for success on this claim were at best dim.

Murphy assails defense counsel's brief on appeal and argues that it failed to adequately present the entrapment defense. He also complains that defense counsel failed to object to prejudicial questioning by this court during the oral argument in his appeal, and further failed to apprise the Supreme Court of this court's error in rejecting his entrapment defense. We have reviewed the parties' briefs on appeal. Defense counsel ably advocated the entrapment issue. Murphy's remaining claims seek to rehash his entrapment defense and are barred for the reasons previously discussed.

Finally, Murphy bases his claim of ineffective assistance on defense counsel's alleged failure to object to the trial judge's efforts to coerce a guilty plea. For reasons already stated, the facts of this incident require further development. *Accord, Porcaro I*, 784 F.2d at 42. If Murphy can establish his judicial misconduct claim under Fed.R.Cr.P. 11(e), this may also support his ineffective assistance of counsel claim.

Accordingly, except with respect to Murphy's claims of judicial misconduct based on the court's purported efforts to coerce a guilty plea, and of ineffective assistance of counsel based on defense counsel's purported failure to object to this alleged misconduct by the district judge, the judgment of

---

any other witnesses to the alleged conversation. The government can respond. Depending on what is found, a hearing will or will not be appropriate. But we think this claim should be decided by another factfinder. *Accord, Porcaro,*

784 F.2d at 44. *See also Dziurgot v. Luther,* 897 F.2d at 1227 (evidentiary hearing on claim of drug-induced waiver of right to be present at trial should be held by judge other than the trial judge to maintain the appearance of justice).

dismissal is *affirmed*. As to the two excepted claims, the case is *remanded* for further proceedings before a different judge.

*So ordered.*