# United States Court of Appeals
## For the First Circuit

---

No. 98-2178

UNITED STATES OF AMERICA,

Appellee,

v.

ANTONIO BIERD,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Stahl, Circuit Judge.

---

Laura C. Edmonds, by Appointment of the Court, for appellant.
Allison D. Burroughs, Assistant U.S. Attorney, with whom Donald K. Stern, United States Attorney, and Mark W. Pearlstein, Assistant U.S. Attorney, were on brief for appellee.

---

June 28, 2000

---

**COFFIN, <u>Senior Circuit Judge</u>.** Defendant Antonio Bierd pled guilty to charges of money laundering, drug possession, and related conspiracies. He now seeks vacation of his convictions or, in the alternative, resentencing on the ground that his plea was not knowing, voluntary, and intelligent, in part due to the court's alleged improper participation in the plea negotiation process. Defendant also argues that he should not have been given a sentencing enhancement based on the court's finding that he had knowledge that the funds he transmitted were drug proceeds. Because we conclude that defendant's guilty plea was valid and that the court did not err in sentencing him, we affirm his convictions.

## I. <u>Factual Background</u>

In April 1998, defendant entered an unconditional guilty plea to drug possession with intent to distribute and a related conspiracy and entered an <u>Alford</u> plea[1] to three counts of money laundering and a related conspiracy, based on the following allegations made by the government.

---

[1]When entering an <u>Alford</u> guilty plea, a defendant is not required to admit guilt. This procedure was authorized by the Supreme Court in <u>North Carolina</u> v. <u>Alford</u>, 400 U.S. 25 (1970), holding that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." <u>Id.</u> at 37.

Co-defendant Francisco Objio owned two check cashing businesses -- Best Video, in Brockton, Massachusetts, and Best Money Exchange, in Jamaica Plain.  Defendant managed Best Video for Objio.  Despite the fact that neither entity maintained a foreign money transmittal license, defendant and Objio had established a scheme by which they transferred money for others to the Dominican Republic, employing various mechanisms designed to avert reporting requirements because the funds were often drug proceeds.

One user of their services was an undercover Massachusetts state police officer posing as a drug dealer who delivered money to defendant or Objio for transfer to the Dominican Republic on three separate occasions in the fall of 1997.  Each time the officer dropped off money, in small denominations, he reiterated the need for secrecy and spoke about the drug business and his customers.  Defendant and Objio allowed the officer to use a false name and broke the large transactions into smaller amounts to avoid reporting requirements.

Instead of depositing drug proceeds, generally large amounts of cash, into the bank accounts of Best Video or Best Money Exchange, the drug proceeds were used to cash third party checks, which were then deposited into the bank accounts.  To transfer the money, Objio would contact his associate in the

Dominican Republic, who held checks that were drawn on Best Money Exchange's account and stamped with Objio's signature. The checks in the Dominican Republic were then made payable to persons other than the ultimate recipient, and after the checks were cashed, the cash was delivered to the recipient intended by the sender.

Defendant and Objio were also involved in drug trafficking. Specifically, defendant helped arrange the purchase and transfer of a kilogram of cocaine on one occasion in August 1997.

On the second day of the joint trial of defendant and Objio, Objio renewed a severance motion, arguing that defendant's defense that he was only following orders was in conflict with his own. At sidebar, the district judge explained that he was inclined to deny the motion and the following exchange occurred:

> Court: There is no Nuremberg defense. If [defendant] gets on the stand and says I followed orders, [he's] guilty. And it's unclear to me, maybe not all the charges, but these money laundering charges, it's unclear to me if that's true if that's what's really the defense. Why doesn't he plead out, get the three levels he's entitled to and then that will accomplish the severance, but that's not for me to say. That's for - - -
>
> Defense counsel: That's exactly where I think we're headed.
>
> Court: Well, if that happens, it happens. I have nothing to say about it.

The next day, defendant entered his <u>Alford</u> and unconditional guilty pleas and he was subsequently sentenced.

Defendant then appealed. His counsel filed an <u>Anders</u> brief[2] and moved to withdraw. This court identified as non-frivolous the issue of whether the trial judge violated Fed. R. Crim. P. 11(e)(1) by initiating a plea discussion and approved the appointment of new counsel to represent defendant.

## II. <u>Whether Defendant's Plea was Knowing, Voluntary, and Intelligent</u>

Defendant's overarching argument is that his plea was not voluntary as required by Fed. R. Crim. P. 11. First, defendant alleges that the court violated Fed. R. Crim. P. 11(e)(1) by participating in the plea negotiation process. Second, defendant contends that the court coerced him into pleading guilty by promising him a three level reduction in his base offense level for acceptance of responsibility.

We review the totality of circumstances when considering a request to withdraw a guilty plea, considering primarily whether a defendant's guilty plea was "knowing, voluntary and intelligent within the meaning of Rule 11." <u>See</u> <u>United States</u> v. <u>Cotal-Crespo</u>, 47 F.3d 1, 3-4 (1st Cir. 1995).[3] Rule 11

_____

[2]In <u>Anders</u> v. <u>California</u>, 386 U.S. 738 (1967), the Supreme Court explained that "if [a defendant's] counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." <u>Id.</u> at 744.

[3]We also evaluate "(1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the

embodies three "core concerns": "1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea." United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995).

Although defendant failed to raise his claim before the trial court, "a Rule 11 challenge will not be deemed waived upon a party's failure to raise it in the district court." United States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991). Rule 11(h) states that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Furthermore, the advisory committee notes to the 1983 amendments to Fed. R. Crim. P. 32, which authorizes plea withdrawal motions, explain that when a defendant moves for the first time on appeal to set aside his guilty plea, "the applicable standard is that stated in Hill v. United States, 368 U.S. 424 (1962): 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" We find that regardless of which standard is employed, the court's statements did not constitute reversible error because,

---

defendant's motion; [and] (3) the existence or nonexistence of an assertion of innocence," United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994), although these factors need not be emphasized in this case because we find that the defendant's plea was knowing, voluntary, and intelligent.

although they were arguably at "variance from the procedures required" by Rule 11, they were not so egregious as to "affect substantial rights" or constitute a "fundamental defect."

Defendant first alleges that the court initiated a plea discussion in violation of Fed. R. Crim. P. 11(e)(1)'s mandate that "[t]he court shall not participate in any discussions between the parties concerning any . . . plea agreement." Defendant points to the exchange that occurred on the second day of trial at sidebar when his co-defendant attempted to revisit his severance motion. He explains that his counsel immediately relayed this conversation to him, which prompted his desire to change his plea to guilty.

The Rule 11(e)(1) prohibition "simply commands that the judge not participate in, and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court." United States v. Bruce, 976 F.2d 552, 556 (9th Cir. 1992). This ban on judicial involvement in the plea bargaining process furthers three goals. The primary philosophy behind it is that "[j]udicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty." Id. at 556. Second, "the interests of justice are best served if the judge remains aloof

from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any question or suspicion when it becomes his duty to impose sentence." United States v. Werker, 535 F.2d 198, 203 (2d Cir. 1976). And third, the prohibition "preserves the judge's impartiality after the negotiations are completed," for example when assessing the voluntariness of a plea or presiding over trial when a negotiation fails. See United States v. Casallas, 59 F.3d 1173, 1178 (11th Cir. 1995) (citing Bruce, 976 F.2d at 556-57).

Because we find limited authority within the circuit directly addressing a complaint that a judge improperly participated in plea negotiations,[4] we survey the case law to get a flavor for the kinds of court statements that have been deemed impermissible intervention. We conclude that the court's language, although not definitively foreclosing the interpretation that defendant suggests, was not so egregious as to require vacation of the conviction.

---

[4]In Porcaro v. United States, 784 F.2d 38 (1st Cir. 1986), this court remanded the defendant's appeal for further proceedings on several bases, among them that the "trial judge's making of a plea offer, if it occurred, would appear to have violated Fed. R. Cr. P. 11(e)(1)." Id. at 42. And in Murchu v. United States, 926 F.2d 50 (1st Cir. 1991), we remanded a section 2255 petition for further proceedings to determine if the court participated in off the record plea discussions. See id. at 57.

Improper participation resulting in vacation occurs, for example, when a court comments on or mandates what it perceives to be an appropriate penalty for a defendant in the context of plea agreement discussions. See, e.g., United States v. Crowell, 60 F.3d 199, 204 (5th Cir. 1995) (sentence vacated because it was improper for court to indicate, while the parties were negotiating a second agreement, that a penalty more severe than that in the initial rejected agreement was necessary); United States v. Anderson, 993 F.2d 1435, 1439 (9th Cir. 1993) (plea vacated due to court's violation of the rule by its "prospective refusal to accept a plea to fewer than the full thirty counts, and direction to the prosecutor not to offer any such deal in the future"). When a judge breached the rule by stating, during a conference call with the prosecutor and defense counsel that was intended to facilitate a plea bargain, that "there is no way on God's green Earth I'm going to sentence [defendant] to only seven years, and I think the likelihood is I'm going to exceed the guidelines," the defendant's conviction was set aside. United States v. Barrett, 982 F.2d 193, 194-96 (6th Cir. 1992). The defendants' guilty pleas were vacated when the judge stated that he would be more comfortable if the defendants were never released from jail and essentially crafted

-10-

a more stringent plea agreement than that proposed.  See United States v. Miles, 10 F.3d 1135, 1138-40 (5th Cir. 1993).

Further, when a trial judge threatens a defendant with a higher sentence if he pursues his right to a trial instead of pleading guilty, a defendant's plea must be vacated.  For example, it was improper for a judge to say to the defendants as trial began:

> We don't play games in this court.  Y'all want to plead guilty, you can plead guilty today.  If you don't want to plead guilty, we'll go to trial.  We have got plenty of time to try them.  That will give each one of you until noon today to file any plea agreements.  After that you will plead straight up or you go to trial. . . . They want to go out and get arrested, they come in here and they'll get a fair trial, and if they get found guilty, they'll also get a fair sentence, fairly high.

United States v. Corbitt, 996 F.2d 1132, 1133-35 (11th Cir. 1993).  And a trial judge transgressed the rule, resulting in vacation of the defendants' convictions, when he repeatedly urged the defendants to "think carefully" about the fact that they faced life sentences upon conviction after trial, reminded them that the penalty under the sentencing guidelines would be "so heavy, so very, very heavy," and requested that the prosecution leave the offer open to allow the defendants additional time.  See Bruce, 976 F.2d at 555, 558; see also Casallas, 59 F.3d at 1177 (plea vacated when the court emphasized to defendant who declined to plead guilty that he

would receive a ten-year minimum sentence under the proposed agreement but risked the fifteen-year mandatory minimum if he were convicted after trial); cf. Crowell, 60 F.3d at 204 (no violation of Rule 11 when the court, in evaluating a plea agreement that had been presented, compared a defendant's sentence under a proposed plea agreement with the potential sentence upon conviction after trial).

On the other hand, in Blackmon v. Wainwright, 608 F.2d 183 (5th Cir. 1979), the court held that a trial judge's "off-the-cuff" remarks concerning a possible sentence did not rise to the "level of participation" envisaged by Rule 11. See id. at 184-85. Further, when a court warned a defendant who indicated a desire to plead guilty "of the obvious risk should he plead guilty to the substantive offense and then go to trial on the conspiracy charge," Rule 11(e)(1) was not violated. See United States v. Johnson, 89 F.3d 778, 783 (11th Cir. 1996).

Given this review of relevant case law, we sense a distinct qualitative difference between statements found to require vacation and the comments made here. In the first place, the remarks of the court did not take place in the context of plea negotiation discussions. The judge was speaking only to counsel, in the context of the denial of a co-defendant's motion for severance, and his comments were immediately followed by his

reminder to counsel that he held no opinion on any plea discussions or defendant's decision whether to plead guilty. The judge did not threaten defendant with consequences if he did not plead guilty, express a preference as to one penalty or disposition, or attempt to shape the terms of the agreement, and he reiterated his neutrality on any plea negotiations. Thus, the coercion guarded against by Rule 11(e)(1) did not arise. We think the Ninth Circuit said it best: "The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. It does not establish a series of traps for imperfectly articulated oral remarks." United States v. Frank, 36 F.3d 898, 903 (9th Cir. 1994). The court's comments in the case at bar were of this nature. They were impromptu, unemphatic, and unrepeated. To seize on such as reversible error would, we conclude, raise the crossbar to an unrealizable height.

Defendant's second contention is that he did not understand the consequences of his plea. Defendant argues that the court misled him to believe that he would be entitled to a three point reduction for acceptance of responsibility, rendering his plea invalid because he actually was entitled to only a two point reduction due to the fact that he did not plead guilty in time

to spare the government the efforts of preparing for trial or to allow the court to effectively allocate its resources. See U.S.S.G. § 3E1.1.[5] Defendant points specifically to the court's sidebar comments as well as the following statements from the plea colloquy: first, when speaking to the prosecutor while defendant was in conference with his attorney, the court said, "[a]ssume under guideline calculations a reduction for acceptance of responsibility," and, second, when later asking the defendant whether he'd been promised anything in exchange for his guilty plea, the court noted, "one benefit [of pleading guilty] is, if I think you've accepted your responsibility, the guideline range is lower."

We conclude that when the entirety of the plea colloquy is reviewed, defendant's complaints hold no merit. The court accurately depicted the sentencing possibilities:

> And under the guidelines I cannot go higher than the top of the guidelines, up to life in prison, unless there's something especially evil about you that's not

---

[5]Although not raised on appeal, the issue of whether defendant was eligible for any acceptance of responsibility reduction due to his entry of an Alford plea as opposed to an unconditional guilty plea was raised at sentencing. Due to this unresolved issue, the judge declined to make a determination as to whether he was giving defendant: 1. both a two level reduction for acceptance of responsibility under § 3E1.1 and a two level enhancement under § 3B1.1(c) based on his role as a manager of the personnel or assets of a criminal endeavor, or 2. neither the reduction nor the enhancement. We review the issue as if the court gave both the reduction and the enhancement.

in those books.  But equally, I can't go below the bottom of the guidelines unless there's something especially good about you that's not in those books, and that's very rare.

So, I ask the government, not because I'm going to follow what they tell me, but because they probably want the most severe range of the people I will talk to, to tell me what they think it will work out to be. And they tell me you're looking at not less than 78 months nor more than 97 months in prison.

. . . .

Now, if it works out that way, it's very unlikely then that I would be in a position to sentence you to anything less than 78 months in prison.

Defendant ultimately was sentenced to seventy-eight months of imprisonment.[6]

Defendant relies on United States v. Hernandez-Wilson, 186 F.3d 1 (1st Cir. 1999), and United States v. Gray, 63 F.3d 57 (1st Cir. 1995).  In Gray, we vacated a guilty plea because, when the defendant indicated that he did not understand the maximum punishment, the court, in an effort to clarify, stated that the maximum sentence would be ten years to life although in fact the mandatory minimum sentence was ten years.  See Gray, 63

---

[6]Defendant was sentenced to 78 months on counts 1 through 4 (money laundering and conspiracy) and 71 months, to run concurrently, on counts 9 and 11 (drug possession and conspiracy).

Defendant insists that he believed the acceptance of responsibility reduction would be applied to the 78 to 97 month sentence, such that ultimately he would receive a sentence of less than 78 months.  Even if defendant's belief were reasonable, a defendant's misunderstanding of the guideline sentencing range does not require the court to allow his guilty plea to be withdrawn.  See United States v. De Alba Pagan, 33 F.3d 125, 127 (1st Cir. 1994).

-15-

F.3d at 60-61. In <u>Hernandez-Wilson</u>, we allowed a defendant to withdraw his guilty plea because "[h]e was told that he would be eligible for a lighter sentence for which he was not eligible." <u>Hernandez-Wilson</u>, 186 F.3d at 6.

In contrast, the court in this case did not provide defendant with incorrect sentencing information at the plea colloquy and in fact defendant was ultimately sentenced to seventy-eight months, the lowest possible sentence in the range cited by the judge. Admittedly the judge's sidebar reference to the acceptance of responsibility credit envisioned a three point reduction; nevertheless, it was an off-hand remark to defendant's counsel at sidebar rather than any meaningful portion of the plea colloquy and did not indicate to defendant that he would receive a sentence lower than that which he did receive. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Raineri</u>, 42 F.3d 36, 42 (1st Cir. 1994) (upholding guilty plea even though misinformation given to the defendant because it did not lead him to "expect a lesser penalty than he actually received"). The judge's subsequent and more important references to the reduction at the plea colloquy did not reference the number of points, and in fact once characterized the reduction as only a possibility, and thus were not misleading. Moreover, they were accompanied by an explanation that the guidelines calculation

would be affected by post-pleading materials from the attorneys and an understanding that the court would not be determining the actual sentence until a later date.

Defendant also complains that the court neglected to inform him that he faced a likely enhancement under U.S.S.G. § 2S1.1(b)(1) due to his knowledge that the funds he was transmitting were drug proceeds. The court did not err by not forewarning defendant of all possible sentencing enhancements he might face. See United States v. De Alba Pagan, 33 F.3d 125, 127 (1st Cir. 1994) (holding that "the fact that a defendant misapprehends the likely guideline sentencing range does not constitute a fair and just reason for withdrawing a guilty plea"). The court informed defendant that it was highly unlikely that he would receive a sentence outside the applicable guideline range and ultimately sentenced defendant to the lowest penalty referenced as a possibility.

In conclusion, we find that the court's statements did not affect defendant's substantial rights nor did they rise to the level of a fundamental defect. Thus, defendant's plea was not a product of coercion but instead was entered knowingly, voluntarily, and intelligently.

III. Sentencing

Defendant argues that the court erred by increasing his base offense level by three due to his knowledge that the funds he transmitted were the result of drug dealing.  See U.S.S.G. § 2S1.1(b)(1) (calling for three level enhancement "[i]f the defendant knew or believed that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances").  Defendant contends that because he entered an Alford plea to the money laundering charges, the enhancement cannot be applied because he did not admit to the requisite knowledge. He also asserts that there was insufficient evidence to support the court's factual findings.

The presentence report recommended a three level increase under U.S.S.G. § 2S1.1 to which defendant did not object.  Nor did defendant object to this enhancement at sentencing.  "We have repeatedly stated in the sentencing context, as well as in other areas, that issues not presented to the district court will not be addressed for the first time on appeal."  United States v. Haggert, 980 F.2d 8, 10 (1st Cir. 1992).  This rule is relaxed only in "extreme cases."  See id. at 11.

"It is well settled that during the sentencing proceedings, a district court has broad discretion in determining the information that may be received and considered regarding a

-18-

defendant." United States v. Pellerito, 918 F.2d 999, 1002 (1st Cir. 1990); see 18 U.S.C. § 3577. Thus, it is not necessary that defendant admit to the facts upon which an enhancement is based.

As to the evidence supporting the court's finding, it is more than sufficient. See United States v. Brum, 948 F.2d 817, 819 (1st Cir. 1991). The court was entitled to consider evidence presented in the trial prior to defendant's guilty plea, see United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990), as well as the facts recorded in the presentence report, see United States v. Skrodzki, 9 F.3d 198, 202 (1st Cir. 1993), such as that defendant was the principal contact with several of the drug dealers using Best Video's services and that the undercover officer represented the funds he wished to transfer as funds for the purchase of drugs. In fact, the court expressly adopted the facts set out in the presentence report, facts which defendant did not substantively dispute. See United States v. Lagasse, 87 F.3d 18, 20 (1st Cir. 1996) ("We accept the facts found in the uncontested portions of the [PSR] . . . .").[7] The facts presented in the presentence report and at trial were more than sufficient to support the court's finding that

---

[7]Defendant's only objection to the factual description of the offense conduct in the presentence report was to the use of the word "managed."

-19-

defendant had knowledge that the funds were the fruit of drug dealings.  See United States v. Knecht, 55 F.3d 54, 57 (2d Cir. 1995) (enhancement valid even when the only reason defendant had to form the belief was a statement by an undercover agent in a sting operation).

Thus, this is far from the "extreme case" in which the raise-or-waive rule should be relaxed.

## IV.   Ineffective Assistance of Counsel

Finally, defendant contends that his trial counsel provided him with ineffective assistance in violation of his Sixth Amendment right.  As we have often held, "fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court."  United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (citing cases).  We have allowed exceptions "only when the critical facts are not in dispute and the record is sufficiently developed to allow reasoned consideration of the claim."  Id.

Defendant's claims revolve around his trial counsel's recommendations with regard to pleading and sentencing, involving facts not well developed nor necessarily free from dispute. Moreover, defendant does not argue that his claim is one that can be effectively evaluated for the first time on

-20-

appeal.  In short, it is a claim that must be brought first before the district court via a request for post-conviction relief.

## V. Conclusion

We conclude that the court's statements did not affect defendant's substantial rights nor did they constitute a fundamental defect and that defendant's guilty plea was knowing, voluntary, and intelligent.  Further, the court did not err in enhancing defendant's sentence under U.S.S.G. § 2S1.1(b)(1). Finally, defendant's ineffective assistance claim is dismissed without prejudice.

Affirmed.