USCA1 Opinion

 

 November 20, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2293 UNITED STATES, Appellee, v. LLOYD R. HAGGERT, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, ______________ Brown,* Senior Circuit Judge, ____________________ and Bownes, Senior Circuit Judge. ____________________ ____________________ Charles F. Dalton, Jr., with whom Dalton, Baron & London __________________ _______________________ were on brief for appellant. F. Mark Terison, Assistant United States Attorney, with whom _______________ James L. McCarthy, Assistant United States Attorney, and Richard _________________ _______ S. Cohen, United States Attorney, were on brief for appellee. ________ ____________________ ____________________ ____________________ *of the Fifth Circuit, sitting by designation. 1 BOWNES, Senior Circuit Judge. Defendant-Appellant, _____________________ Lloyd Haggert, appeals the sentence imposed by the district court following his conviction for bank fraud. Specifically, Haggert challenges the court's imposition of a five-level increase from his base offense under Sentencing Guideline 2F1.1, which mandates such an increase when the "loss" attendant to fraud is "more than $40,000." U.S.S.G. 2F1.1(b)(1)(F) (Nov. 1991). The district court looked to the amount of loss that Haggert intended to obtain fraudulently from the bank, in assessing loss at $62,508.50, the sum total of Haggert's fraudulent sight drafts. Haggert asserts that the court ought instead to have used the actual loss resulting from his criminal conduct, which the court had determined was $5,511.30. We affirm the sentence imposed by the district court. I. I. Background Background __________ Lloyd Haggert was convicted by a jury in the United States District Court for the District of Maine of violating Title 18 U.S.C. 1344, by defrauding the federally-insured Skowhegan Savings Bank. The act underlying Haggert's conviction was his attempt to pay delinquent real estate mortgages with valueless sight drafts. On May 30, 1989, Haggert presented two sight drafts, totalling $62,508.50, to the assistant manager of the Skowhegan Savings Bank who, at -2- that time, believed them to be cashier's checks and stamped them as paid. The bank later discovered that these drafts lacked a financial institution identification number. Further investigation revealed that the financial institution upon which they were drawn was not a legitimate, operating institution. When the Skowhegan Savings Bank refused to discharge Haggert's mortgages, Haggert obtained a judgment to enforce the sight drafts.1 The bank eventually foreclosed on Haggert's mortgages. After accounting for the proceeds from foreclosure, the bank suffered a loss of $20,248.10. In addition, the bank incurred costs of $5,511.30, in fending off Haggert's attempts to force the bank to honor the fraudulent sight drafts. Prior to his sentencing, Haggert responded to the pre-sentence report prepared by the government. Haggert objected to the determination of the amount of restitution, which had been set at $25,759.40, to reflect the total loss to the bank in its dealings with Haggert. In addition, Haggert challenged two factual assertions that are not pertinent to the issue before us. Haggert made no further objections either at the pre-sentence stage or during the sentencing hearing. In fact, the district judge directly ____________________ 1 It would appear that the defendant obtained the judgment himself, without going through any judicial procedures. -3- 3 asked Haggert whether he had any additional objections, at the beginning of the sentencing hearing, and whether he had anything to add, near the end of the hearing. The district court determined that the amount of the defendant's fraud was $62,508.50, and added the mandatory five-level increase for loss of more than $40,000 to Haggert's sentence. For the purpose of calculating restitution, the court determined that the bank's actual damages were limited by statute to the loss directly related to the criminal conduct of the defendant and thus exclusive of the bank's foreclosure costs. See 18 U.S.C. 3664 ___ (1988). The court established that the actual damage caused by the defendant's fraud was $5,511.30, the cost to the bank of Haggert's attempts to enforce the fraudulent sight drafts. Haggert was sentenced to a term of fifteen months in prison, followed by a two-year term of supervised release, and was ordered to pay $5,511.30 in restitution to the Skowhegan Savings Bank. II. II. Discussion Discussion __________ A. Standard of Review __________________ We have repeatedly stated in the sentencing context, as well as in other areas, that issues not presented to the district court will not be addressed for the first time on appeal. See, e.g., United States v. Shattuck, 961 F.2d 1012, ___ ____ _____________ ________ -4- 4 1015 (1st Cir. 1992)("[w]e do not review sentencing guideline disputes which were not preserved before the district court.")(citing United States v. Dietz, 950 F.2d 50, 55 (1st _____________ _____ Cir. 1991)); United States v. Uricoechea-Casallas, 946 F.2d ______________ ___________________ 162, 166 (1st Cir. 1991)(failure to raise sentencing guideline issue at district court precludes raising it on appeal); United States v. Curzi, 867 F.2d 36, 44 (1st Cir. _____________ _____ 1989)("an issue not presented in the district court will not be addressed for the first time on appeal."). As we observed in the case of Hernandez-Hernandez v. United States, 904 F.2d ___________________ _____________ 758, 763 (1st Cir. 1990), "[w]e have applied this proposition in well over a hundred cases since Johnston v. Holiday Inns, ________ ____________ 595 F.2d 890 (1st Cir. 1979)." In Johnston, this court explained that while the rule ________ governing issues raised for the first time on appeal is not absolute, it is relaxed only in extreme cases. Arguments not raised below will be entertained on appeal only in "`horrendous cases where a gross miscarriage of justice would occur'" and, in addition, where the newly asserted ground is "`so compelling as virtually to insure appellant's success'." Id. at 894. The Johnston standard was recently affirmed in ___ ________ United States v. McMahon, 935 F.2d 397, 400 (1st Cir. 1991). _____________ _______ In this case, Haggert had ample opportunity to challenge the sentence imposed. The pre-sentence report assessed the amount of fraud as $62,508.50, and expressly -5- 5 recommended the five-level increase eventually adopted by the district court. In his memorandum responding to the pre- sentence report, Haggert offered three objections, none of which concerned either the calculation of the amount of fraud or the five-level increase. Moreover, during the sentencing hearing, the district court judge took care to inquire whether Haggert had further objections or comments, and Haggert voiced no additional concerns. See generally, United ___ _________ ______ States v. McMahon, 935 F.2d at 399 (failure to object to pre- ______ _______ sentence report); United States v. Fox, 889 F.2d 357, 359 ______________ ___ (1st Cir. 1989)(failure to challenge facts set forth in pre- sentence report either in responsive memorandum or during sentencing hearing precluded raising challenge as to same issue on appeal). Because Haggert neglected to raise before the district court the sole basis of his appeal, Haggert's appeal is precluded subject only to the narrow exception articulated in Johnston. Our reading of the Sentencing Guidelines and ________ the supporting case law convinces us that no error of such proportion exists in this case. Far from implicating a miscarriage of justice, or evoking a new ground of almost assured success, the district court's sentence was a proper interpretion and application of the Sentencing Guidelines.2 ____________________ 2 Had Haggart preserved his claim below, our inquiry would have been two-fold. In Sentencing Guideline cases, we first determine de novo the scope of the Guideline at issue and __ ____ -6- 6 Indeed, we are convinced that Haggert would not have prevailed on the merits even if the issue had been preserved for appeal. B. The Sentencing Guidelines _________________________ The issue raised on appeal is the meaning of "loss" in the Sentencing Guideline covering fraud. The district court measured loss by the amount that the defendant intended ________ to obtain fraudulently from the bank. Defendant argues that the actual loss resulting from his criminal conduct should ______ have provided the basis for augmenting his sentence. We begin with an examination of the Sentencing Guidelines. Guideline 2F1.1 covers crimes involving fraud and deceit. That Guideline begins with a base offense level of six, which level is adjusted upward in accordance with the dollar value of the loss involved in the crime. Section 2F1.1 mandates an increase of five levels when the "loss" is "more than $40,000." U.S.S.G. 2F1.1(b)(1)(F) (Nov. 1991). Application Note 7 of the Commentary accompanying the Guideline deals with the valuation of loss. In relevant part, Application Note 7 provides: Consistent with the provisions of 2X1.1 (Attempt, Solicitation or Conspiracy), if an intended loss that the defendant was ____________________ then assess the district court's fact-finding for clear error. See United States v. St. Cyr, No. 92-1639, slip op. ___ ______________ _______ at 6 (1st Cir. October 15, 1992). -7- 7 attempting to inflict can be determined, this figure will be used if it is greater than the actual loss. U.S.S.G. 2F1.1, comment. (n.7).2 This explication of the Guideline has been relied upon in the First Circuit and in other circuits. See United States v. Cesar Resurreccion, No. ___ _____________ __________________ 91-2015, slip op. at 7 (1st Cir. October 30, 1992) (even where it cannot be stated precisely, the intended loss will be used if it is larger than the actual loss). See also ___ ____ United States v. Schneider, 930 F.2d at 556; United States v. _____________ _________ _____________ Palinkas, 938 F.2d 456, 465 n.19 (4th Cir. 1991); United ________ ______ States v. Smith, 951 F.2d 1164, 1166 (10th Cir. 1991); United ______ _____ ______ States v. Shattuck, 961 F.2d at 1016 (citing United States v. ______ ________ _____________ Kopp, 951 F.2d 521 (3rd Cir. 1991)). ____ ____________________ 2 The first sentence in Application Note 7 refers the reader, for a discussion of valuation of loss, to the Commentary in 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). The Commentary in 2B1.1, in turn, refers for discussion of partially completed offenses to 2X1.1 (Attempt, Solicitation, or Conspiracy). The example provided in 2B1.1 of a partially completed offense is a completed theft that is part of a larger, attempted theft. This example is closely analogous to the case at hand where the defendant was not successful in reaping the anticipated profits of his fraud. See generally, United States v. Schneider, 930 F.2d ___ _________ _____________ _________ 555, 556 (7th Cir. 1991)("Many fraudulent schemes are interrupted before they reach fruition. From a practical standpoint they are attempts, and their gravity depends in significant degree on the size of the loss that would have been inflicted had the scheme not been interrupted."). The second sentence in Application Note 7, which begins the quote cited above, also refers to 2X1.1. Whichever road is taken, the result is the same. A sentencing judge must look to the amount that the defendant intended to defraud or to steal, or to the actual loss, whichever is greater. -8- 8 Application Note 7 contains an example of intended loss that closely approximates the crime committed by Haggert. The example provides that, "if the fraud consisted in . . . representing that a forged check for $40,000 was genuine, the loss would be $40,000." U.S.S.G. 2F1.1, comment. (n.7). The fraudulent sight drafts that Haggert presented to the bank as genuine totalled $62,508.50. By analogy to this example, the loss would be $62,508.50, the assessment made by the district court. Notwithstanding the general rule whereby loss for the purpose of sentencing is the greater of the actual or intended losses, Haggert urges us to apply to his case an exception narrowly created for loan application and contract procurement cases. The exception, articulated in subpart (a) of Application Note 7, defines a category of fraudulent actions for which the expected or actual loss to the victim provides the basis for the sentence enhancement. Application Note 7(a), in pertinent part, provides as follows: -9- 9 In fraudulent loan application cases and contract procurement cases where the defendant's capabilities are fraudulently represented, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan. In some cases, the loss determined above may significantly understate or overstate the seriousness of the defendant's conduct . . . . U.S.S.G. 2F1.1, comment. (n.7(a)). We fail to see the relevance of this exception for the factually distinct crime of fraudulent loan payments made well after loans have been secured. Nevertheless, we examine the scope of this exception in order to underscore our conclusion that Haggert's fraud is precisely the sort of criminal conduct that the exception does not cover. The Seventh Circuit has explained the scope of the exception for fraudulent information in a loan application or in contract procurement by distinguishing between two types of fraud. See United States v. Schneider, 930 F.2d at 558. ___ _____________ _________ The first type of fraud implicates the "true con artist," who never intends to perform the undertaking, such as the terms of the contract or loan repayments, but who intends only to pocket the money without rendering any service in return. The second type of fraud involves a person who would not have -10- 10 attained the contract or loan but for the fraud, but who fully intends to perform.3 Id. In the latter case, and only __ in the latter case, is the intended loss not to be considered for sentencing. Contrary to Haggert's attempt to place himself in the latter category of offenders, Haggert's conduct is a paradigm of the first type of fraud. Haggert had no intention of paying the loans for which he was in default. He drafted valueless forms of payment which he presented to the bank as valid. When he succeeded momentarily in his ploy, Haggert went so far as to attempt to enforce a judgment against the bank for the amount of his fraudulent sight drafts. When the bank had difficulty locating the financial institution upon which the fraudulent drafts were drawn, Haggert evaded the bank's requests for his assistance, and obstructed the bank's attempts to determine the facts, by continuing to insist upon the veracity of the information he provided the bank. Finally, Haggert knowingly presented the sight drafts that had been falsely stamped as "paid" to another financial institution to support new loan applications. Any of these actions alone would suffice to establish Haggert's intention not to pay the debts he owed to the bank; together, they ____________________ 3 See generally, United States v. Smith, 951 F.2d at 1167 ("A ___ _________ _____________ _____ thief who steals $100,000 is more culpable than a salesman who obtains $100,000 by selling a victim an $80,000 house he fraudulently represents as being worth $100,000."). -11- 11 underscore that Haggert fully intended to defraud the Skowhegan Savings bank in the amount of $62,508.50. As the Schneider distinction between two types of _________ fraud illustrates, even under the exception for loan application and contract procurement cases, the intent of the defendant is the measure by which the loss is to be assessed. See United States v. Schneider, 930 F.2d at 558. In each of ___ _____________ _________ the cases upon which defendant relies where the court held that the loss should be offset to reflect collateral pledged by the defendant, or that the actual loss should constitute the loss for sentencing purposes, the defendants lacked the intent to inflict the full amount of the fraud. See United ___ ______ States v. Smith, 951 F.2d at 1169 (finding no evidence that ______ _____ the defendant intended to inflict the amount of loss established by the district court); United States v. Hughes, _____________ ______ 775 F. Supp. 348, 349 (E.D. Cal. 1991) (noting that the defendant neither intended nor desired that his loans would go into default). Contrawise, in loan application cases where there was no intent to perform, the intended loss has provided the basis for augmenting the defendant's sentence. See United States v. Johnson, 908 F.2d 396, 398 (8th Cir. ___ _____________ _______ 1990). The Guidelines are concerned with assessing the seriousness of the defendant's conduct, given the wide array of conduct covered by fraud. See U.S.S.G. 2F1.1 comment. ___ -12- 12 (backg'd.).4 See also United States v. Rothberg, 954 F.2d ___ ____ _____________ ________ 217, 218 (4th Cir. 1992). What the Guidelines do not envision is rewarding a defendant for her or his lack of skill in executing a criminal act. Haggert's failure to reap the full financial benefits of his fraud cannot provide a basis for lowering the sentence imposed by the district court. Affirmed. ________ ____________________ 4 Note 7(a), which articulates the exception for loan applications and contract procurement, contains language that underscores the importance of assessing the seriousness of the defendant's conduct as well. We refer to the first sentence of the second paragraph quoted supra at p. 9. _____ -13- 13