USCA1 Opinion

 

 March 7, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2009 UNITED STATES, Appellee, v. PATRICIA C. HARRISON, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________ _____________________ Samuel J. Buffone, with whom Brian S. Chilton and Ropes & __________________ ________________ _______ Gray were on brief for appellant. ____ Carolyn Stafford Stein, Assistant United States Attorney, _______________________ with whom Donald K. Stern, United States Attorney, was on brief ________________ for appellee. ____________________ ____________________ TORRUELLA, Chief Judge. Defendant-Appellant Patricia TORRUELLA, Chief Judge. ___________ C. Harrison appeals from the sentence imposed by the district court after her plea of guilty to seventy-seven counts of bank fraud in violation of 18 U.S.C. 1344.1 Appellant, who is currently serving her prison sentence, requests that her sentence be vacated and that we remand for resentencing. For the reasons stated below, we affirm the district court's sentence. BACKGROUND BACKGROUND __________ On December 17, 1991, a federal grand jury returned an indictment against Patricia C. Harrison and her husband Stephen G. Harrison, charging them with one hundred counts of bank fraud in violation of 18 U.S.C. 1344 and with one count of bankruptcy fraud in violation of 18 U.S.C. 152. Appellant moved to dismiss the indictment on May 18, 1992, on the ground that the bank fraud counts were multiplicitous. Six months later, on November 16, 1992, the district court denied Appellant's motion and on January 12, 1993, a federal grand jury returned a superseding indictment, which merged a number of the bank fraud counts from the original indictment into a lesser number of counts. The superseding indictment alleged three separate  ____________________ 1 This section provides, in pertinent part: Whoever knowingly executes . . . a scheme or artifice -- (1) to defraud a financial institution; or (2) to obtain any of the moneys . . . [of] a financial institution, by means of false or fraudulent pretenses . . . [shall be guilty of a crime]. 18 U.S.C. 1344 (1988) & Supp. II (1990). -2- schemes by which Appellant and her husband defrauded the banks involved. On April 10, 1995, Appellant pled guilty to seventy- seven of the seventy-nine counts of bank fraud charged in the superseding indictment.  In the plea agreement, Appellant acknowledged that she was subject to separate punishments of up to five years' imprisonment on each of the counts but one, for which she was subject to a maximum penalty of up to thirty years. Appellant also agreed to pay a special assessment of $50 on each of the seventy-seven counts to which she pled guilty. The pre-sentence report ("PSR") calculated Appellant's offense level in accordance with the plea agreement, with two exceptions, only one of which is relevant to this appeal. The PSR calculated the appropriate loss range under U.S.S.G. 2F1.1(b)(1)(K) to be more than $5,000,000 because the victim bank lost principal in the amount of $10,998,072.67. This differed from the plea agreement, which provided for a loss of between $2-$5 million. In her pre-hearing sentencing memorandum, Appellant asked the district court to depart from the applicable guideline range for two reasons: (i) the amount of loss overstated the seriousness of her offense; and (ii) her husband's illness. Apart from these arguments, Appellant did not object to the PSR's amount of loss or guideline calculation, or to any of the offense conduct detailed in the PSR that was the basis for those findings. At the sentencing hearing, and after hearing argument from the parties regarding the appropriate loss amount, the -3- district court found the loss for purposes of 2F1.1 to be between $2-5 million. In addition, the district court found that the total offense level was 18, with a corresponding guideline sentencing range of twenty-seven to thirty-three months' imprisonment. The district court made a three-level downward departure, on the basis of circumstances surrounding the ill health of Appellant's husband, bringing the total to level fifteen, with a corresponding range of eighteen to twenty-four months. Appellant's total offense level of fifteen was made up of the following elements: a base offense level of six under  2F1.1(a); a ten-level enhancement under 2F1.1(b)(1) to reflect the amount of loss, found to be between $2-$5 million; a two- level enhancement for more than minimal planning under  2F1.1(b)(2)(A); a two-level enhancement for supervising others in the commission of the offense under 3B1.1(c); and a three-level downward departure based on the ill health of Appellant's husband. Combined with a criminal history category of I, Appellant's resulting total offense level was fifteen.  On August 7, 1995, the district court sentenced Appellant to 24 months in prison and ordered her to pay restitution in the amount of $10,998,072.67, the amount lost by the victim bank as found in the PSR by the district court. The district court also imposed a three year period of supervised release and a special assessment of $3,850.  This appeal followed. We have jurisdiction pursuant to 18 U.S.C. 3742(a) (1994). -4- STANDARD OF REVIEW STANDARD OF REVIEW __________________ We review for clear error factbound matters in sentencing, mindful that such factual findings need only be supported by a preponderance of the evidence, and review de novo _______ questions of law, including the applicability of a relevant guideline. United States v. Mart nez-Mart nez, 69 F.3d 1215, ______________ _________________ 1224 (1st Cir. 1995). DISCUSSION DISCUSSION __________ Appellant entered into an unconditional plea agreement, whereby she agreed to plead guilty to the seventy-seven counts of bank fraud, to subject herself to separate punishment on each of these counts, and to pay a special assessment on each of those counts. Appellant does not challenge her conviction but, rather, challenges the sentence imposed by the district court. Appellant contends that the seventy-seven counts of bank fraud are facially multiplicitous because the superseding indictment supports, at most, only three counts of bank fraud. See, e.g., United States ___ ____ _____________ v. Broce, 488 U.S. 563, 574 (1989) (establishing the principle _____ that a defendant who pleads guilty to a criminal charge may subsequently assert a claim of multiple punishment in violation of the Double Jeopardy Clause only if the violation is apparent on the face of the indictment itself); United States v. Lilly, ______________ _____ 983 F.2d 300, 302-04 (1st Cir. 1992) (holding that an indictment for bank fraud is multiplicitous when it charges a defendant with multiple counts for each "single execution of a unitary scheme"). Because the seventy-seven counts were multiplicitous, Appellant -5- argues, she was prejudiced in the view of the sentencing court and her sentence violates Double Jeopardy principles.  While our review of the district court's application and interpretation of the Sentencing Guidelines is plenary, Mart nez-Mart nez, 69 F.3d at 1224, "[w]e have repeatedly stated _________________ in the sentencing context, as well as in other areas, that issues not presented to the district court will not be addressed for the first time on appeal." United States v. Haggert, 980 F.2d 8, 10 _____________ _______ (1st Cir. 1992). We have also stated that "[a]rguments not raised below will be entertained on appeal only in 'horrendous cases where a gross miscarriage of justice would occur' and, in addition, where the newly asserted ground 'is so compelling as virtually to insure appellant's success.'" Id. (quoting Johnston ___ ________ v. Holiday Inns, 595 F.2d 890, 894 (1st Cir. 1979)). Here, these ____________ straightforward rules leave Appellant's sails flapping idly in the wind. Although "a defendant's unconditional guilty plea does not automatically waive the right to appeal matters incident to sentencing as opposed to guilt," United States v. Cordero, 42 ______________ _______ F.3d 697, 699 (1st Cir. 1994), we nonetheless find Appellant's multiplicity argument waived. Even though she only raises this argument as to her sentencing, we find controlling the fact that Appellant had ample opportunity to challenge the sentence imposed and raise her multiplicity argument as to sentencing before the district court.  -6- The record before us clearly shows that Appellant never objected on grounds of multiplicity or raised this argument during the change of plea hearing, in her pre-hearing sentence memorandum, or during the sentencing hearing. The PSR calculated Appellant's offense level to be twenty-one. Appellant did not file any objections to the PSR. In her pre-sentence memorandum, Appellant argued on two grounds that the district court depart from the applicable guideline sentencing range, but neither of them concerned the multiplicity of the counts. Indeed, besides supporting a finding of Appellant's failure to object, the record shows that the district court specifically drew Appellant's attention to the government's evidence regarding the counts charged, pointed out the portion of the agreement identifying the maximum penalties to which defendant could be subject on each count, and notified Appellant of the possibility of the imposition of restitution.  Appellant insists, however, that she did not waive her multiplicity challenge, arguing that it was preserved for appeal because she challenged the original indictment on multiplicity grounds. Appellant relies on two cases, United States v. ______________ Molinaro, 11 F.3d 853, 858 n.9 (9th Cir. 1993), cert. denied, 115 ________ ____________ S. Ct. 668 (1994), and United States v. Fuesting, 845 F.2d 664 _____________ ________ (7th Cir. 1988), for the proposition that she was not required to challenge the superseding indictment after her motion to dismiss the original indictment was denied. We need not rule on the merit of Appellant's argument, because what controls is -7- Appellant's subsequent act of voluntarily and intelligently pleading guilty to all seventy-seven counts, coupled with her failure to make any objection to the superseding indictment, to the seventy-seven counts, to the offense conduct contained in the PSR, or to the sentence imposed. Thus, we decline to consider this argument.2  Appellant also argues that the district court's fraud loss calculation was erroneous under 2F1.1(b)(1)(K), which increases the level of punishment according to the amount of "loss" caused by the fraud. We find, however, that Appellant waived any claim of error in the court's calculation of loss under 2F1.1, because no objection was made to the accuracy of the facts set forth in the offense conduct section of the PSR, to the amount of loss found by the district court, or to the district court's guideline calculation. Because Appellant failed to object to the district court's determination as to the amount of loss for purposes of 2F1.1, her sentence can be reversed on this basis only upon a showing of "plain error." See Fed. R. ___ Crim. P. 52(b).3 To meet the plain error standard there must  ____________________ 2 We note that even if the counts were multiplicitous, remand for resentencing would not be an appropriate remedy. Appellant received identical sentences on each of the seventy-seven counts, and it is undisputed that all of the offense conduct that was the basis for those sentences would be equally relevant to resentencing on the remaining counts. Accordingly, remand would be an empty and needless exercise. See Lilly, 983 F.2d at 305 ___ _____ n.11.  3 This rule provides, in pertinent part, that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R. Crim. P. 52(b). -8- be: (i) a reviewable error (ii) that is "clear" or "obvious" and (iii) affects "substantial rights." United States v. Benjamin, ______________ ________ 30 F.3d 196, 197 (1st Cir. 1994). We retain the discretion not to correct an error, however plain, unless the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, ___ U.S. ___, _____________ _____ ___, 113 S. Ct. 1770, 1779 (1993) (quoting United States v. ______________ Atkinson, 297 U.S. 157, 160 (1936)); see United States v. ________ ___ ______________ Olivier-D az, 13 F.3d 1, 5 (1st Cir. 1993) (quoting same ____________ language).  Far from constituting plain error, the district court's finding as to the amount of loss attributable to Appellant's conduct under 2F1.1(b)(1)(K) was fully supported by the record. The PSR found that the actual loss to the victim bank was $10,998,072.67 in principal and $7,858,292.69 in interest on Appellant's loan. At the hearing, the court was therefore prepared to adopt the PSR's determination that loss for purposes of 2F1.1 was more than $5,000,000. According to the transcript of the sentencing hearing, the district court adopted the lower $2,000,000 to $5,000,000 loss range "in light of the need to calibrate the loss attributable to [Appellant's] actions more fairly." Contrary to Appellant's claim, nowhere in our review of the record do we find any evidence that the district court's finding was based on "speculation." We note further that Appellant fully conceded the accuracy of these figures at her  ____________________  -9- change of plea hearing and at sentencing. Accordingly, we find no "clear" or "obvious" error by the district court. Even if we were to find any, there is no evidence that the alleged error affected her "substantial rights" or her sentence.  Finally, Appellant argues that the district court erred in ordering restitution under 18 U.S.C. 3664, which establishes the factors to be considered by the court in determining an order of restitution, in excess of $10 million, an amount which exceeded the loss range used by the district court for purposes of 2F1.1. We find, however, that Appellant waived her claim regarding the restitution order because she failed to object to the PSR's calculation of the victim bank's actual loss as $10,998,072.67 in principal, to the PSR's determination that restitution in that amount was appropriate, or to the district court's order of restitution in that amount. As with the amount of loss, we can reverse the restitution order only for plain error. Olivier-D az, 13 F.3d at 5. Appellant conceded below and ____________ does not deny on appeal that the actual amount of loss in principal to the victim bank was in excess of $10 million. Accordingly, the district court's order of restitution in that amount was fully appropriate, and, because it is fully supported by the record, it does not constitute plain error. We find no evidence of harm to Appellant's "substantial rights" by the district court's decision to hold Appellant responsible for the entire loss resulting from her fraud.  -10- For the foregoing reasons, the sentence imposed by the district court is Affirmed. ________ -11-