ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Vectrus Systems Corporation | ) ASBCA No. 63239 |
| | ) |
| Under Contract No. FA56513-14-D-0008 | ) |

APPEARANCE FOR THE APPELLANT:      David Newsome, Esq.
                                                                                Counsel

APPEARANCES FOR THE GOVERNMENT:   Caryl A. Potter III, Esq.
                                                                                 Air Force Deputy Chief Trial Attorney
                                                                              Josephine R. Farinelli, Esq.
                                                                              Le'Dara Clark, Esq.
                                                                                Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE EYESTER
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Department of the Air Force (Air Force or government) awarded Vectrus Systems Corporation (Vectrus or appellant) a task order against a commercial items contract which included several contract line item numbers (CLINs) associated with housing maintenance services. After the task order performance period ended, the government de-obligated unused funds on several CLINs via a bilateral modification.

Vectrus seeks summary judgment arguing it is entitled to the total task order award amount and that the funds should not have been de-obligated. According to Vectrus, the task order CLINs were fully funded and fixed-priced and therefore it bore the maximum risk and full responsibility for all costs and resulting profit or loss. The government cross-moves for summary judgment arguing that Vectrus waived its right to the claim when it signed the modification de-obligating the funds. The government further argues that Vectrus has cited nothing supporting its assertion it is entitled to the full task order amount when it did not perform all the work. In the alternative, the government argues it constructively terminated the task order for convenience and Vectrus is only entitled to compensation as set forth in the applicable clause.

For the reasons set forth below, we grant the appellant's motion in part and deny it in part and grant the government's motion in part and deny it in part.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

On June 25, 2014, the government awarded contract No. FA5613-14-D-0008 to Exelis Systems Corporation (now Vectrus) to provide maintenance of family housing for the Kaiserslautern Military Community in accordance with the performance work statement (PWS), appendices, and technical exhibits (R4, tab 4 at 1, 506, tab 9 at 5).[1] The contract's period of performance included one phase-in, one base-year, and four one-year option periods with the last option period ending September 30, 2019 (R4, tab 4 at 4-430).

The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (JUL 2013), which states that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties" (R4, tab 4 at 477; FAR 52.212-4(c)). Further, the clause explains that the contractor, when submitting an invoice, shall include the "[d]escription, quantity, unit of measure, unit price and extended price of the items delivered" and "[p]ayment shall be made for items accepted by the Government that have been delivered" in accordance with the contract (FAR 52.212-4(g)(1)(iv)&(i)(1)). The clause includes a paragraph on termination for convenience which instructs that in the event of such a termination, the contractor shall stop work immediately, shall be paid a percent of the contract price reflecting the percentage of the work performed prior to termination but shall not be paid for work performed or costs incurred which could have been avoided (FAR 52.212-4(l)).

The contract incorporated in full FAR 52.216-21, REQUIREMENTS (OCT 1995), which stated that the specified quantities of supplies or services in the contract were estimates only. In addition, the clause explained that the government was to issue orders for delivery or performance pursuant to the "Ordering clause." (R4, tab 4 at 491-92) The relevant ordering clause, incorporated in full, was Defense Federal Acquisition Regulation Supplement (DFARS) 252.216-7006, ORDERING (MAY 2011), which required the government to order the supplies and services via a task or delivery order. The clause stated that such orders were "subject to the terms and conditions of the contract" and notified Vectrus that if there were any conflicts between the two, "the contract shall control." (*Id.* at 496)

The contract included several CLINs outlining the required supplies/services generally and referencing a specific PWS paragraph, and also included associated sub-CLINs containing more detail (*see e.g.*, R4, tab 4 at 346-53).[2] Numerous CLINs

---

[1] The agency issued a modification on January 8, 2015, formally changing the name on the contract to Vectrus (R4, tab 5).

[2] The record generally refers to the sub-CLINs as CLINs. We do the same here to avoid confusion.

2

referenced services for maintenance, cleaning, painting, and other items, indicated the CLIN was "FFP," and included estimated quantities, number of units, fixed unit prices, and estimated amounts (*see e.g.*, *id.* at 6-52).  For example, CLIN 4001 stated it was for change of occupancy maintenance (COM) services which were to be performed for the family housing units described in the subsequently priced sub-CLINs and referenced PWS ¶ 1.3.7.17 (*id.* at 346).  According to that PWS paragraph, Vectrus was to provide COM services as described in appendix 4, such as cleaning and painting, when requested by the contracting officer's representative (COR) (R4, tab 9 at 15, tab 3 at 42).  A relevant sub-CLIN, CLIN 4001AA, was for COM services for two bedroom units/townhouses and set forth an estimated quantity, unit price and estimated amount which equaled the estimated quantity multiplied by the unit price.  That CLIN also stated it was "FFP."  (R4, tab 4 at 347)

There were also CLINs designated as "COST" for items such as appliances, materials and over and above work which contained no fixed unit price but included an estimated quantity and estimated cost (R4, tab 4 at 53, 55, 88).  A relevant example of these CLINs for appliances for the fourth option year is set forth below:

| ITEM NO | SUPPLIES/ SERVICES | EST[.] QUANTITY | UNIT | UNIT PRICE | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| 4010 OPTION | APPLIANCES FFP. . . . | | | | EUR0.00 |

| ITEM NO | SUPPLIES/ SERVICES | EST. QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 4010AA OPTION | APPLIANCE, FREE STANDING COST. . . . | 10,000 | Lot | | EUR200,000.00 Estimated Cost EUR200,000.00 |

(*Id.* at 395-96)  CLIN 4010 referenced PWS ¶¶ 1.9.7 and 1.9.8 (*id.* at 395).  According to those PWS paragraphs, once the government-supplied appliance inventory was depleted, Vectrus was to purchase, transport, install, and connect new appliances when requested by the COR.  PWS ¶ 1.9.9 explained that the government would reimburse Vectrus "on actual costs incurred under the respective CLIN" for the replacement of parts or new appliances and required Vectrus substantiate the actual costs such as by attaching a supplier invoice (R4, tab 9 at 34).

A relevant example of the CLIN for materials for the fourth option year is set forth below:

| ITEM NO | SUPPLIES/ SERVICES | EST. QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 4020 OPTION | MATERIAL COST. . . . | | | | EUR0.00 |
| 4020AA OPTION | MATERIAL COST. . . . | 1,000,000 | Lot | | EUR450,000.00 |

(R4, tab 4 at 427-28) CLIN 4020 stated that the material would be handled as described in the subsequently priced sub-CLINs and referenced PWS ¶ 1.4.1 (*id.* at 427). According to that PWS paragraph, titled Direct Scheduled Work, Vectrus was to develop and implement a system responsive to the residents' emergency and routine requests (R4, tab 9 at 19). With respect to parts and materials Vectrus supplied for this work, it was to maintain the original delivery tickets, sales slips and other documents showing the items purchased under "the cost reimbursement portion of this contract" (*id.* at 19-20). Vectrus was to invoice these items monthly (*id.* at 20).

And last, a relevant example of the CLIN for the over and above work for the fourth option year is set forth below:

| ITEM NO | SUPPLIES/ SERVICES | EST. QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 4021 OPTION | OVER AND ABOVE WORK COST. . . . | | | | EUR0.000 |
| 4021AA | OVER AND ABOVE WORK COST. . . . | 10,000 | Lot | | EUR60,000.00 |

(R4, tab 4 at 429-30) CLIN 4021 referenced PWS ¶ 1.16.8 (*id.* at 429). That PWS paragraph stated that Vectrus was to perform other work identified during performance, which would be subject to DFARS 252.217-7028, Over and Above Work (R4, tab 9 at 43). That clause explains that such work is discovered during maintenance efforts, ordered by the contracting officer, negotiated by the parties, and definitized by a modification. DFARS 252.217-7028.

With respect to payment procedures, the contractor was required to submit requests for payment pursuant to DFARS 252.232-7006, WIDE AREA WORKFLOW [(WAWF)] PAYMENT INSTRUCTIONS (MAY 2013) (R4, tab 4 at 500). All payment requests were to include the CLIN and sub-CLIN "descriptions of the work performed or supplies delivered, unit price/cost per unit," and relevant back-up

4

documents to support the payment request (*id.* at 502). The contract also stated that general and administrative (G&A) expenses were allowable for all of the cost reimbursable CLINs (*id.* at 430).

The government exercised all four option periods, explaining in each modification that funding would be provided via the individual task orders (R4, tabs 6-8, 10). After exercise of the fourth option year, the government issued Task Order No. FA5613-19-FA-063 (TO 63) with a period of performance of March 1, 2019 through September 30, 2019 (R4, tab 11 at 1, 31-45). Block 26 of the task order stated the "TOTAL AWARD AMOUNT (For Govt. Use Only)" was EUR 1,131,982.53 (*id.* at 1). The task order included 50 CLINs, each of which correlated to a CLIN from the requirements contract (*id.* at 3-13). For convenience, we will refer to these as "task order CLINs" or "TO 63 CLINs" within this decision. The following is an example showing some task order CLINs and setting forth only information relevant to the appeal:

| Item | Supplies/Services | Quantity | Unit | Unit Price | Amount |
|------|-------------------|----------|------|-----------|--------|
| 0023 | CLIN 4010AA, APPLIANCES, FREE STANDING. . . . Firm Fixed Price. . . . | 1.0 | Lot | EUR 65,000.00 Estimated | Firm Price EUR 65,000.00 Funded Amount USD 75,739.92 |
| 0039 | CLIN 4020AA, MATERIAL. . . Firm Fixed Price. . . . | 1.0 | Lot | EUR 158,129.19 Estimated | Firm Price EUR 158,129.19 Funded Amount USD 184,256.80 |
| 0040 | CLIN 4021AA, OVER AND ABOVE WORK. . . Firm Fixed Price. . . . | 1.0 | Lot | EUR 35,000.00 Estimated | Firm Price EUR 35,000.00 Funded Amount USD 40,783.03 |

(*Id.* at 3, 7, 11)

The government added funding for certain CLINs via at least two bilateral modifications to TO 63 CLINs (R4, tabs 14-15). One modification, effective on September 12, 2019, added "the amount of Euro 48,319.17 ($56,302.96) for CLIN 4021AA, Over and Above" and related to task order Item 0040 (R4, tab 15 at 1-2). The amount was based on the contractor's cost estimate for repair work (*id.* at 2-4).

In early 2021, almost two years after performance on the task order ended, the government provided Vectrus with a draft bi-lateral modification to de-obligate funding on multiple CLINs for TO 63 (*see* gov't mot., ex. 15 at 1; R4, tab 23 at 1). The draft modification stated: "In consideration of this modification agreed to herein,

the contractor hereby releases the U.S. Government from any and all liabilities under the Task Order for those funds which have been de-obligated via this modification" (app. resp., ex. 3 at 2). Vectrus notified the contracting officer and contract specialist by email that it was entitled to the fixed-priced amount set forth in the task order and it was not in Vectrus' best interest to sign the modification (R4, tab 18 at 5-7).

Vectrus then notified the government by letter that it would not sign the modification because the task order was fixed-priced and fully funded, the government's decision not to use the established capability and funding was not Vectrus' fault, and Vectrus established its workforce, supplies, equipment, and other items to perform the order. According to Vectrus, there had been no termination for convenience, and unlike other task orders issued pursuant to requirements contracts which are estimates, this task order set forth a fully funded, fixed quantity and the government breached the contract. (Gov't mot., ex. 15 at 1)

The government disagreed, arguing that "[a]lthough this is a [fixed-price] contract these services have estimated quantities that sometimes deviate substantially from the actual quantities" and therefore the task orders also state estimated quantities (R4, tab 18 at 1-3). The government told Vectrus that if it did not sign the bilateral modification, then the government would issue it as unilateral (R4, tab 23 at 2).

Vectrus then requested the removal of the "Statement of Release" from the modification and stated its belief that the contract would not be closed out. The contract specialist obliged, stating that the "Release of Claims is deleted according to your suggestion." Vectrus also notified the contract specialist, via email and attaching the signed modification, of the following:

- Vectrus reserves the right to submit invoices for all fully funded, definite quantity, Firm Fixed Price (FFP) task orders (TOs), for payment by the Government, based on Vectrus maintaining the labor and materials to perform the work ordered and fully funded by the Government, but following issuance of the TO the Government determined the services are not required;
- Vectrus reserves the right to submit a claim under the contract Disputes clause 52.233-1 for an equitable adjustment for any invoice issued under all fully funded TOs that are rejected by the Government on the basis the service was not required and not performed.

(App. resp., ex. 1 at 1)

By July of 2021, both parties had signed Modification No. P00005 to TO 63 pursuant to FAR 52.212-4(c), reducing quantities and de-obligating fiscal year 2019 funding by EUR 204,308.40; the modification was effective January 15, 2021 (R4, tab 16 at 1-2). The modification specifically stated the following:

> The purpose of this modification is to reduce the quantities and de-obligate FY 2019 excess funding for the period 01 Mar 2019 to 30 Sep 2019. Changes are described in the summary of changes identified on the attached continuation pages.
> Information for DFAS only:
> the Contracting Officer asserts that actions are closed with no residual balance, regardless of entitlement system residual balance.

(*Id.* at 1) The modification identified the total quantity and/or amount reduced for several CLINs for TO 63 (*id.* at 3-8).

After the parties signed the modification, Vectrus submitted final invoices seeking: EUR 155,219.94 for multiple task order/contract CLINs;[3] EUR 2704.34 for task order CLIN 23/contract CLIN 4010AA (appliances, free standing); EUR 42,551.81 for task order CLIN 39/contract CLIN 4020AA (material); and EUR 3828.43 for task order CLIN 40/contract CLIN 4021AA (over and above work) (gov't mot., exs. 16a-16d (DD 250 tab)). In response, the government stated that all invoices for received services and materials for TO 63 "cost reimbursable contract have been paid" (gov't mot., ex. 17 at 1).

On October 26, 2021, Vectrus submitted a certified claim seeking Euro 204,308.40 for TO 63 (R4, tab 19, tab 20 at 1). The government acknowledges that this was the same amount de-obligated from TO 63 via the modification at issue (gov't mot. at 15). As before, Vectrus argued that the task order was fixed-priced and contained a definite quantity, the government breached the task order, and Vectrus was therefore owed the total amount (R4, tab 20 at 2-3). In its claim, Vectrus identified the

---

[3] The invoice listed the task order/contract CLINs as follows: 1/4001AA; 3/4001AC; 41/4001AD; 43/4001AF; 4/4002AA; 6/4002AC; 44/4002AD; 46/4002AF; 7-9/4003AA through 4003AC; 10/4004AB; 11-13/4005AA, 4005 AB, 4005AD; 47/4005AE; 14-17/4005AK through 4005AN; 18/4006AA; 19/4007AB; 20-21/4008AA through 4008AB; 25-26/4012AA through 4012AB; 27/4012AD; 28/4013AA; 29/4014AA; 30/4014AC; 31-34/4015AA through 4015AD; 36/4016AA; 37/4017AA; and 50/4018AA (gov't mot., ex. 16c (DD 250 tab)). All of these contract CLINs were identified as fixed unit-priced (*see* R4, tab 4 at 345-422).

7

total funded amount, total unpaid amount, and total amount for "Multiple" CLINs, CLIN 4010AA, CLIN 4020AA,[4] and CLIN 4021AA.[5] Vectrus sought payment of the unpaid, but funded, amount. (R4, tab 20 at 1)

On January 19, 2022, the government denied the claim (R4, tab 23). According to the contracting officer, Vectrus was not entitled to the total funded amount in the task order for CLINs 4010AA and 4021AA because Vectrus did not show any unreimbursed costs associated with the material and appliances CLINs. In addition, the contracting officer stated that Vectrus failed to provide supporting documents showing unreimbursed costs associated with the line item for "Multiple" CLINs as there was no attached Exhibit 2 (*id.* at 2). The contracting officer's final decision did not specifically address the request for CLIN 4020AA (*see id.*).

On April 4, 2022, Vectrus filed its notice of appeal and later its complaint. In its complaint, Vectrus stated it established its workforce, supplies and equipment once awarded TO 63 and the government breached the task order when it failed to pay Vectrus for all quantities ordered under the task order (compl. at 3-4). In its answer, the government denied all allegations and asserted the affirmative defense that the claim is without merit pursuant to the terms of the contract, and in the alternative, the government constructively terminated the contract thereby eliminating or limiting compensation owed to Vectrus (answer at 4-5).

DECISION

Vectrus moved for summary judgment. The government opposed the motion and cross-moved for summary judgment. Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With respect to cross-motions, we "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citation omitted).

---

[4] The claim refers to CLIN 4022AA for materials, however it should have referenced CLIN 4020AA (*see* gov't mot., ex. 16b (tab DD 250 Mat) and R4, tab 4 at 428). We cite to CLIN 4020AA in the decision.

[5] The claim cited an Exhibit 2 when discussing the multiple CLINs for which Vectrus sought compensation. Although there was no such exhibit attached, the claim referenced the four task order invoices Vectrus submitted to the government, which identified the specific task order CLIN and contract CLIN it sought to have paid. (R4, tab 20 at 1)

8

*Did Vectrus waive this claim in bilateral Modification P00005?*

The government first argues that Vectrus waived its claim via bilateral Modification P00005 (gov't mot. at 13-14, 18). Specifically, the government contends that it did not agree to reserve Vectrus' future claim in the modification. Further, the government contends the bilateral modification shows that Vectrus itself agreed to waive any claim against the government for payment of these de-obligated funds because the contract included the commercial items changes clause stating that changes to the contract must be agreed upon by both parties. In other words, according to the government Vectrus agreed (implicitly) to the change set forth in the modification--the de-obligation of funds--and therefore waived its claim to those funds. (Gov't reply at 8)

Vectrus states, and provides an email as support, that the contracting officer had initially presented a modification containing explicit waiver language, which Vectrus refused to sign (app. resp. at 8-9). Vectrus, therefore contends there is no explicit release provision in the modification and the conduct of the parties supports that there was no waiver or release (*id.* at 6, 8-9).

We have explained before that "[t]he effect of the bilateral exercise is a question of law that does not preclude summary judgment." *Alutiiq Commercial Enters., LLC*, ASBCA No. 61503, 20-1 BCA ¶ 37,506 at 182,198. Further, a waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "An intent to waive a contractual right must be manifest in a party's failure to object." *United Techs. Corp., Pratt & Whitney Grp.*, ASBCA No. 46880 *et al.*, 95-1 BCA ¶ 27,592 at 137,482 (citations omitted). We give the parties' contemporaneous actions "great weight" and refer to the surrounding circumstances to determine what they intended when they executed the bilateral modification at issue. *Range Tech. Corp.*, ASBCA No. 51943, 04-1 BCA ¶ 32,456 at 160,546 (citations omitted); *see also Maint. Eng'rs*, ASBCA No. 23131, 81-2 BCA ¶ 15,168 at 75,073 ("[r]elease or waiver of claims is basically a matter of intention").

Because a waiver must be an intentional relinquishment, the government's argument here fails as there is no specific waiver or release language in the bilateral modification. *See CTA Inc.*, ASBCA No. 47062, 00-2 BCA ¶ 30,947 at 152,754 (modification did not contain any release of claims and therefore the claim was not barred by release or waiver). Further, Vectrus notified the government of its concerns before signing the modification and refused to sign any modification if it contained waiver language. Vectrus did not waive its claim in the modification.

We note that the government cited no case law to support its position and appellant cited some appeals discussing accord and satisfaction, which constitutes a

different legal theory than waiver and release. *See Coastal Gov. Services, Inc.*, ASBCA No. 50283, 01-1 BCA ¶ 31,353 at 154,832. Accord and satisfaction occurs "when some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim." *Bell BCI Co. v. United States*, 570 F.3d 1337, 1340-41 (Fed. Cir. 2009) (quoting *Cmty. Heating & Plumbing Co.* v. *Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993)). There is a four part test to prove accord and satisfaction, with one part being "a meeting of the minds of the parties." *Id.* at 1341 (quoting *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002)).

To the extent the government was arguing there was an accord and satisfaction as a result of the bilateral modification, it failed to meet its burden of proof. There is no specific language in the bilateral modification indicating a meeting of the minds, i.e., that Vectrus' claim for the fixed-priced amount was satisfied. In this regard, the government knew of Vectrus' position and failed to resolve the issue before the modification was signed or even indicate to Vectrus that by signing the modification Vectrus was accepting the government's position. The government's argument here fails.

*Is Vectrus entitled to the full amount set forth in the task order?*

As noted, Vectrus argues that it is entitled to the full amount set forth in TO 63 because it was fully funded, fixed-priced and set forth a definite and not estimated quantity and amount (app. mot. at 1; app. resp. at 7-8). Vectrus contends that the task order is different from the other task orders issued and therefore unique and stands on its own (app. resp. at 8). According to Vectrus, as the task order and each CLIN was fixed-priced, pursuant to the principles of FAR 16.202-1 it placed full responsibility on Vectrus and was not subject to any adjustment on the basis of Vectrus' cost experience in performing on the task order (app. mot. at 5). Vectrus contends that when the government failed to order all stated quantities, it breached the contract (*id.* at 6, citing *CI², Inc.*, ASBCA No. 56257, 14-1 BCA ¶ 35,698, *recon denied, CI², Inc.,* ASBCA No. 56257, 15-1 BCA ¶ 35,829).

The government argues the contract language takes precedence over any language in the task order (gov't mot. at 17). The government states the WAWF payment instructions required Vectrus use a combination invoice and receiving report to identify the work performed or supplies delivered for payment (gov't reply at 6). Further, the government states that Vectrus has failed to identify any statute or regulation authorizing the government to always pay for services never performed simply because the contract was a requirements contract and the underlying task order was fully funded (gov't mot. at 17; gov't reply at 5). And finally, the government wants us to look at extrinsic evidence when it contends that Vectrus' conduct prior to signing Modification P0005, in which it signed without issue other similar

modifications de-obligating unused funds, shows Vectrus never interpreted the task order the way it does now (gov't mot. at 18; gov't reply at 5-7).

Contract interpretation is a matter of law. *See e.g.*, *ThinkQ, Inc.*, ASBCA No. 57732, 13-1 BCA ¶ 35,221 at 172,825 (citing *Muniz v. United States*, 972 F.2d 1304, 1309 (Fed. Cir. 1992)). The rules of contract interpretation require that we first look to the plain language of the contract. *Langkamp v. United States*, 943 F.3d 1346, 1349 (Fed. Cir. 2019).

*Task Order/Contract CLINs 0023/4010AA, 0039/4020AA*

These CLINs for TO 63 specifically state "Firm Fixed Priced" and refer to a specific CLIN in the contract. The task order CLINs also set forth a specific quantity, unit, unit price identified as "Estimated," and amount stating "Firm Price" in Euros and "Funded Amount" in US dollars. (R4, tab 11 at 3-13) While Vectrus would like us to read the task order in isolation and fixate only on the words "Firm Fixed Price" and "Firm Price," we must "examine the contract as a whole, harmonizing and giving meaning, if possible, to all provisions. *See ThinkQ, Inc.*, 13 BCA ¶ 35,221 at 172,825 (citing *NVT Tech., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)). In other words, the language of a particular contractual provision must be read in the context of the entire agreement. *Speegle Constr., Inc.*, ASBCA No. 54236, 05-1 BCA ¶ 32,866 at 162,863 (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983)).

As the task order was issued pursuant to Vectrus' requirements contract, we must review that contract and its attachments. *See Relyant, LLC*, ASBCA No. 58172, 16-1 BCA ¶ 36,226 at 176,748 ("Interpreting the contract as a whole requires the Board to interpret all documents that are part of the same transaction together."). Therefore, we reviewed the contract CLINs referenced in the task order.

Task order CLIN 0023 referenced contract CLIN 4010AA for appliance services, which in turn referenced PWS ¶¶ 1.9.7 and 1.9.8 requiring Vectrus purchase, transport, install and connect new appliances when requested by the COR. PWS ¶ 1.9.9 explained the government would only reimburse Vectrus "on actual costs incurred under the respective CLIN" for the replacement of parts or new appliances and required Vectrus substantiate the cost such as by attaching a supplier invoice. (R4, tab 4 at 395, tab 9 at 34) Likewise, task order CLIN 0039 referenced contract CLIN 4020AA for material, which also stated (in the referenced PWS paragraph) that this was for items purchased under "the cost reimbursement portion of this contract" and Vectrus was therefore to invoice these items monthly (R4, tab 4 at 427, tab 9 at 20).

Both contract CLINs were designated as "COST" CLINs, contained no fixed unit price, but set forth an estimated quantity and estimated cost (R4, tab 4 at 53, 55,

88, 427-28).  This language indicates the CLINs are cost reimbursable and not fixed-priced.  In fact, the contract itself recognized some of the CLINs were cost reimbursable when it stated G&A expenses were allowable for the cost reimbursable CLINs (*id.* at 430).

Second, in reviewing further the task order, the same CLINs also indicate they are cost reimbursable despite the "Firm Fixed Price" language.  In this regard, the relevant CLINs identify a quantity of one and unit of a "Lot" (R4, tab 11 at 3, 7, 11).  Vectrus argues the government here was required to, but "failed to order all of the definite quantities" (app. mot. at 5).  Vectrus, however, does not explain how the government failed to order one lot of materials, for example.  Nor could it, as the contract explained that these were items that would be ordered during performance, as needed, on a cost reimbursable basis.  (*See e.g.,* R4, tab 9 at 34)

Accordingly, Vectrus' reliance on *CI², Inc.* is misplaced.  In that appeal, the Board ruled the appellant was entitled to the mutually agreed upon fixed-priced amount for the quantities of registrars ordered pursuant to a modification issued to the contract.  *CI², Inc.*, ASBCA No. 56257, 14-1 BCA ¶ 35,698 at 174,782, *recon denied, CI²*, ASBCA No. 56257, 15-1 BCA ¶ 35,829.  The Board explained in a decision on reconsideration that the government had ordered these registrars via the modification but failed to "assign" them to the various work sites consistent with its contract obligations.  *CI²*, ASBCA No. 56257, 15-1 BCA ¶ 35,829 at 175,195.  In comparison, the government here did not order one lot of appliances or materials because as noted, these were ordered as needed and reimbursed for cost.

Therefore, when the entire contract and task order are read together, the only reasonable reading is that these are not fixed-priced or fixed unit-priced CLINs.  *See Pac. Coast Cmty. Servs., Inc. v. United States*, 147 Fed. Cl. 811, 816 (2020), *aff'd,* 858 F. App'x 346 (Fed. Cir. 2021) (denomination of contract as fixed-priced does not trump substance of or control over actual terms of contract).  Further, the contract instructs that if there were any conflicts between an order and contract, "the contract shall control" (R4, tab 4 at 496).  Based on this instruction, these are cost reimbursement CLINs and any total amount shown for these CLINs are not-to-exceed amounts.  *See* FAR 16.301-1 (cost reimbursement contracts "establish an estimate of total cost for the purpose of obligating funds and establishing a ceiling that the contractor may not exceed (except at its own risk) without the approval of the contracting officer.").  For these reasons, we deny Vectrus' motion for summary judgment that it is entitled to the full amount set forth in these CLINs and grant the government's motion.[6]

_____

[6] While we find no ambiguity here, even if one were to find an ambiguity it would be a
    patent ambiguity that would place a reasonable contractor on notice to seek
    clarification.  *See Interstate Gen. Gov't Contractors, Inc. v. Stone,* 980 F.2d

*Task Order/Contract CLIN 0040/4021AA*

Task order CLIN 0040 referenced contract CLIN 4021AA for over and above work. As discussed, over and above work included services not in the baseline but discovered during maintenance efforts, ordered by the contracting officer, negotiated by the parties, and definitized by a modification per DFARS 252.217-7028 (R4, tab 9 at 43 citing DFARS 252.217-7028). Here, the government modified the task order to add funds for task order CLIN 0040, contract CLIN 4021AA, for over and above work (R4, tab 15 at 1-2). According to the modification, it added task order CLINs on over and above work for repair of heating systems in different buildings "based on the contractor cost estimate dated 25 Jul 2019" and the repair of a balcony "based on contractor cost estimate dated 05 Sep 2019" (*id.* at 2-6). The government has failed to explain why Vectrus is not owed the amount set forth in the task order, as modified per DFARS 252.217-7028, and we therefore grant Vectrus' summary judgment motion on this issue.

*Remaining CLINs*

The remaining task order CLINs reference fixed unit-priced contract CLINs. For example, task order CLIN 01 referenced contract CLIN 4001AA, which was for maintenance services on two bedroom units/townhouses (R4, tab 4 at 347). According to the PWS, Vectrus was to provide these maintenance services as described in appendix 4 when requested by the COR (R4, tab 9 at 15). However, the task order here was issued by the contracting officer and the CLINs set forth fixed quantities, the fixed unit price set forth in the requirements contract, and the total firm price amount. We therefore agree with Vectrus that these were fixed-priced CLINs.

The government argues that despite this, Vectrus is still not owed the total amount for these fixed-priced CLINs. In its answer and reply brief, the government argued that FAR 52.212-4(l) precludes recovery for breach of contract and therefore

---

1433, 1434-45 (Fed. Cir. 1992). "As an exception to the rule of *contra proferentem*, under which a contract is construed against the drafter, the patent ambiguity doctrine applies to bar appellant's recovery even though the government was responsible for the poorly-drafted contract." *Dawkins Gen. Contractors & Supply, Inc.*, ASBCA No. 48535, 03-2 BCA ¶ 32,305 at 159,846. Thus, Vectrus was required to seek clarification from the government, and since it failed to do so, we cannot accept its interpretation here.

Vectrus, at most, can only seek recovery under a partial constructive termination for convenience (gov't reply at 9-10).[7]

A constructive termination for convenience is a "legal fiction" as it imposes such a termination on a contractor even when it was never specifically ordered by the contracting officer. *Catherine Kurkjian*, ASBCA No. 61154, 20-1 BCA ¶ 37,594 at 182,538, *aff'd sub nom, Kurkjian v. Sec'y of the Army*, 2021 WL 3520624 (Fed. Cir. Aug. 11, 2021), *cert denied*, 142 S.Ct. 1428 (2022). Pursuant to a constructive termination for convenience, Vectrus would only be entitled to be paid according to the terms set forth in FAR 52.212-4(l), which addresses terminations of convenience for commercial items and services.

FAR 52.212-4(l) states that "the contractor shall stop work immediately" and be paid a percent of the contract price reflecting the percentage of the work performed prior to termination but shall not be paid for work performed or costs incurred which could have been avoided. Here, there was no stoppage of work, rather, the government did not order all of the work. Regardless, the government still could have invoked the clause for these CLINs when it became clear that all of the services were not needed.[8] *Heartland Energy Partners LLC*, ASBCA No. 62979, 22-1 BCA ¶ 38,200 at 185,519-20 (discussing constructive partial termination for convenience pursuant to FAR 52.212-4(l), of fixed-priced task order CLINs for commercial services); *see also Praecomm, Inc. v. United States*, 78 Fed. Cl. 5, 11-13 (2007) (government constructively terminated fixed-priced contract for convenience when it did not require contractor to install the delivered radios). Accordingly, we conclude the deletion of work was a constructive termination for convenience and grant the government's motion on this issue.

---

[7] In its motion, Vectrus also moved to strike the government's affirmative defense that the contract could be deemed constructively terminated arguing it was insufficiently pled by the government (app. mot. at 6-7). According to Vectrus, the government failed to identify supporting facts or evidence in the Rule 4 file (*id.* at 7). The argument concerning constructive termination is a legal argument and therefore it is not clear what facts are missing.

[8] We note that the government did not argue constructive termination in *C1², Inc.*, the appeal relied on by Vectrus. We also note that in the *C1², Inc.* quantum decision, the appellant did not actually pay the wages of those registrars the government failed to assign, and which were on stand-by, and the Board held appellant's damage calculations based upon the full, gross contract revenue for those registrars and temporary registrars was improper. *C1², Inc.*, ASBCA No. 59948, 16-1 BCA ¶ 36,410 at 177,534. Specifically, the Board stated it was contrary to well-settled law to place "appellant in a better position than if the government had fully performed and made all the required assignments." *Id.*

CONCLUSION

For the reasons stated above, we grant Vectrus' motion for summary judgment in part and deny it in part, and grant the government's motion in part and deny it in part. Specifically, we deny the government's motion that Vectrus waived its claim via bilateral Modification P00005; deny Vectrus' motion that it is entitled to the full amount set forth in for Task Order/Contract CLINs 0023/4010AA and 0039/4020AA and grant the government's motion that these CLINs are cost reimbursable; grant Vectrus' motion that it is entitled to the full amount set forth in Task Order/Contract CLIN 0040/4021AA and deny the government's motion; grant Vectrus' motion that the remaining multiple CLINs are fixed-priced but also grant the government's motion that there was a constructive termination for convenience of these CLINs (although a constructive termination for convenience in a commercial items contract/task order still requires the calculation of proper termination costs). Thus, this decision does not resolve the appeal as Vectrus' entitlement to further compensation, if any, will be addressed in further proceedings.

Dated: January 4, 2024

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

15

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63239, Appeal of Vectrus Systems Corporation, rendered in conformance with the Board's Charter.

Dated:  January 4, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals